**Application of Charles THEISEN, Sr., To Limit the Liability as Owner of an MF6 WESTFIELD FIBERGLASS MOTOR BOAT and/or Vessel, Bearing Registration No. N.Y. 0685DK for the Year 1970.**

**No. 71 C 535.**

United States District Court,
E. D. New York.

Oct. 24, 1972.

---

Stanley L. Shapiro, New York City, for claimants.

O'Brien & Kelly, Brooklyn, N. Y., for petitioner.

BRUCHHAUSEN, District Judge.

The petitioner, Charles Theisen, Sr., instituted this proceeding, pursuant to 46 U.S.C. § 183 et seq., for exoneration from or limitation of liability with respect to a claim for wrongful death as a result of an accident involving petitioner's vessel on August 16, 1970 in Moriches Inlet, Suffolk County, State of New York.

It appears that on the day of the accident, the petitioner, Charles Theisen, Sr., was the owner of an outboard motor boat, registration No. N.Y. 0685DK/1970. Prior to the hearing herein, various allegations contained in the petition, were conceded by claimant. There were no concessions concerning the lack of privity or knowledge of the petitioner, as stated in paragraph 6. Thereafter the petitioner stated that a prima facie case was made and he rested.

The claimant's theory of unseaworthiness was based on crew incompetence.

The claimant called the petitioner as his first witness. He testified that he was the owner of the vessel in question and gave his son, Charles Theisen, Jr., permission to operate it and take on passengers. The latter operated the vessel approximately 90% of the time, and when this accident occurred on August 16, 1970, Charles, Jr. was 16 years of age. The petitioner further testified that his son received no formal training or Coast

Guard courses concerning the operation of the said or any other vessel. The only training was supplied by the petitioner, an engineer, working with Brookhaven Laboratories. He also testified that he was aware of a prior accident in 1969 involving his son, Charles, Jr., who was operating the vessel when another passenger was thrown overboard. The petitioner did not know of nor did he inquire of others in the community concerning the reputation of his son regarding the operation of vessels. He knew that his son Charles, Jr., would operate the vessel into sharp zigzag patterns, usually for water skiing. Finally the whereabouts of his son Charles, Jr., is unknown to the petitioner, and he was not in court to testify.

The second witness, John P. Sprague, 17 years of age, knew the petitioner's son, Charles, Jr., for 7 years. He stated that on one occasion, in September 1969 both he and Charles, Jr., were operating their boats and each boy would cut in front of the other, ride along, just goofing around, zigzagging, just kidding around. He considered Charles a good boatman.

The third witness, Curt Frank Amende, Jr., now 19 years of age testified that in August of 1969 he was a passenger in a boat operated by Charles, Jr. At page 79, lines 4–9 he testified in part:

"Well, we went out into the bay and he, you know, he started to show me how his boat would handle and he started making real sharp turns and the boat would pitch up on its edge and almost—just about almost turn over, but, you know, it was—he would go into these wild corners, without really warning you."

It was during one of these turns that the witness went overboard. The following year the witness was aboard the boat a second time, and testified at page 83, lines 3–4:

"Well, he did pretty much the same thing he did the previous year, never changed."

Finally, he testified that the reputation of Charles, Jr., in the community is that of an unsafe driver.

The fourth witness, Walter Gomes, Jr., testified that he was in the middle of the inlet waiting to be picked up after falling from a surf board. He observed an open boat coming around the bend about three-quarter throttle. The boat spun clockwise and something fell out of the boat towards the passenger's right side. There was a lot of spray. A person removed his shirt and jumped into the water.

The fifth witness, Don Edward Nezadel, testified he knew Charles, Jr. and his reputation as to operating a boat was not that good.

The sixth witness, John Sprague, testified he was Commodore of a yacht club and was generally familiar with the waters of Moriches Inlet and furthermore, that other people have mentioned to him that Charles, Jr., is reckless, Tr. p. 160, line 10.

Finally, heretofore stated, the operator of the boat, Charles Theisen, Jr., was not in court to testify. However, in his deposition he indicated that he had the owner's express permission to operate the vessel on the date of the accident, August 16, 1970, that the decedent, Horatio Andres Masloff, a passenger, entered the boat and was seated atop of the backrest of a passenger seat, that two girls whom they knew were traveling alongside in another boat, and beached at Fire Island, that the boat was at one-third throttle and after waving good-bye to the girls, Charles, Jr., stated, "Here we go", that the boat was accelerated to full throttle, the deceased slid off the top of the back seat of the left side front seat, that Charles, Jr., throttled down to two-third speed and at the same time was steering with one hand and was attempting to right Andy with his other hand, that the boat hit the waves or chops which spun the wheel out of his hand, the boat went into a full spin, Andy struck the side windshield and fell overboard and he never saw the passenger again.

■ It is now well established that a petitioner, as owner of a pleasure craft is entitled to avail himself of the limitation and exoneration statute, 46 U.S.C. § 183(a), Petition of Klarman (D.C.1968) 295 F.Supp. 1021 and the cases cited therein.

■ 46 U.S.C. § 183(a) provides that limitation is available only where the liability is incurred without the privity or knowledge of the owner. The claimants have the burden of establishing either unseaworthiness or negligence, and if established, the petitioner must prove that he is entitled to the protection of the limitation statute because of lack of privity or knowledge as to the condition of unseaworthiness or negligence. In Re Marine Sulphur Transport Corp., 312 F. Supp. 1081 (S.D.N.Y.1970).

In China Union Lines, Ltd. v. A. O. Andersen & Co., 5 Cir., 364 F.2d 769, cert. denied 386 U.S. 933, 87 S.Ct. 955, 17 L.Ed.2d 805, the Circuit Court held in part at page 787:

"Privity and knowledge are deemed to exist where the owner had the means of knowledge or, as otherwise stated, where knowledge would have been obtained from reasonable inspection."

In McNeil v. Lehigh Valley Railroad Co., 387 F.2d 623 (2 Cir., 1967) the Court held in part at page 624:

"The district court properly denied appellant's petition for limitation of liability. Under 46 U.S.C. § 183(a) limitation is available only where the liability is incurred 'without the privity or knowledge' of the owner. * * * Adequate inspection would have disclosed the hole in the planking. Negligent failure to discover constitutes privity and knowledge within the meaning of the statute." Cases cited.

■ It is also well settled that a vessel in the hands or control of an incompetent crew renders the vessel unseaworthy. Avera v. Florida Towing Corporation, 322 F.2d 155 (5 Cir., 1963). The Court

in discussing the obligation of a petitioner held in part at page 166:

"With the duty to make inquiry 'the measure' of the knowledge 'is not what the owner knows, but what he is charged with finding out.' Great Atlantic & Pacific Tea Co. v. Brasileiro, 2 Cir., 1947, 159 F.2d 661, 665, 1947 A.M.C. 306. For ' * * * knowledge means not only personal cognizance but also the means of knowledge—of which the owner or his superintendent is bound to avail himself—of contemplated loss or condition likely to produce or contribute to loss, unless appropriate means are adopted to prevent it.' The Cleveco, 6 Cir., 1946, 154 F.2d 605, 613, 1946 A.M.C. 933."

In Petition of Long, 295 F.Supp. 857 (S.D.N.Y.1968), affirmed 2 Cir., 439 F. 2d 109, the Court held in part at pages 858–859:

"The right to seek exoneration from or limitation of liability provided in § 183 provides a unique remedy to shipowners. To balance this advantage, the shipowner has the burden of proof to establish that the loss of the vessel was occasioned without his privity or knowledge." Cases cited.

As Judge Learned Hand pointed out in S. S. Hewitt, 284 F. 911, 912 (S.D.N.Y. 1922), the owner has the burden to "show either just how the loss did occur, or, if he cannot, he must exhaust all the possibilities, and show that as to each he was without privity."

■ In applying the above law to the case at bar, the Court concludes that the petitioner has failed to sustain his burden.

The testimony is uncontradicted that the owner petitioner used the vessel involved in this accident approximately 10% of the time and that his son, aged sixteen, at the time of the accident used the boat approximately 90% of the time and had no formal or professional training in the operation and safety of vessels except what the petitioner taught him

personally; that the petitioner had actual knowledge of at least one prior accident involving his son, Charles, Jr.; that petitioner's son had a bad reputation in the community for operating a vessel and that petitioner's son would operate his vessel at high speeds and go into sharp turns with passengers in the boat. Finally, the deposition of the petitioner's son concerning the accident itself indicated reckless and negligent operation of the boat. It is clear that the applicable law applied to the facts herein establish negligence and also that the vessel was unseaworthy, rendered so by an incompetent crew or operator. The petitioner has failed to sustain his burden of "lack of knowledge or privity." The petitioner had ample opportunity and available information to discover the true situation of his son's conduct at sea.

The petition is dismissed and so ordered.

This shall also constitute findings of facts and conclusions of law.