In the Matter of the Complaint of GROUP THERAPY, INC., Samuel Sears, Vincent Dire and Ken Stiver as Owners of M/Y Group Therapy for Exoneration from or Limitation of Liability, Petitioners and Counter–Defendants,

v.

Connor WHITE, Franklin Lopez, Jr., Sara Clementi and City of Buffalo, Claimants.

No. 00–CV–394A.

United States District Court, W.D. New York.

July 16, 2003.

Rodgers, Menard & Coppola LLP, Douglas Coppola, Buffalo, NY, for Petitioners and Counter–Defendants.

Kroll, Rubin & Fiorella, LLP (Edward F. Kenny, of Counsel), New York City, for Petitioners and Counter–Defendants.

Quinn, McGarry, Caffery & Patricia, P.C. (Michael P. Caffery, of Counsel), Buffalo, NY, for Claimant White.

Block & Colucci (Mark J. Longo, and, Kevin William Hourihan, of Counsel), Buffalo, NY, for Claimant Lopez.

Jaeckle, Fleischmann & Mugel (Norman David Bishara, and Daniel W. Gerber, of Counsel), Buffalo, NY, for Claimant Clementi.

Michael B. Risman, Corporation Counsel, City of Buffalo (Kevin J. Keane, Assistant Corporation Counsel, Of Counsel), Buffalo, NY, for Defendant City of Buffalo.

## DECISION AND ORDER

ARCARA, District Judge.

On July 22, 1999, claimant Connor White was seriously injured in a single-vessel boating accident on Lake Erie in Buffalo, New York. According to the record, the circumstances surrounding the accident are as follows: unbeknownst to the boat's owners, claimants White and Sara Clementi boarded the vessel M/Y Group Therapy

with a group of friends. Upon discovering the boat's keys in a drawer, the group collectively decided to take the boat out for a ride. Claimant Clementi was at the helm of M/Y Group Therapy when claimant White fell from the boat and was struck by the boat's propellers.

Petitioners, owners of M/Y Group Therapy, commenced this exoneration action on May 9, 2000, seeking to exonerate themselves completely from any liability for claimant White's injuries or, in the alternative, to limit their liability to the boat's alleged value of $79,500. In response, claimant Clementi asserted a counterclaim against petitioners seeking to be declared an insured under petitioners' insurance policy issued by Commercial Union Insurance Company.[1]

This case was referred to Magistrate Judge Leslie G. Foschio on August 11, 2000 pursuant to 28 U.S.C. § 636(b)(1). Petitioners moved for summary judgment on September 19, 2001. On October 24, 2001, claimant White filed a motion to dismiss.

On March 4, 2003, the Magistrate Judge entered his Report and Recommendation concluding that petitioners' motion for summary judgment for exoneration, pursuant to the Limitation of Liability Act, 46 U.S.C. §§ 181–196, should be granted, and that claimant White's motion to dismiss should be denied. In reaching these conclusions, the Magistrate Judge made the following findings: (1) the shipowners' exoneration action was not time barred;[2] (2) pursuant to the applicable federal maritime law, claimants' use of the boat was inimical to the owner's interests; and (3) claimant's discovery requests, if granted, would not create a genuine issue of material fact. The Magistrate Judge also recommended that Clementi's counterclaim seeking declaratory judgment should be dismissed because Clementi failed to implead Commercial Union Insurance Company as a party to this action.

On April 3, 2003, claimant Clementi filed objections to the Magistrate Judge's Report and Recommendation. The Court heard oral argument on claimant Clementi's objections on May 30, 2003.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reading the submissions and hearing arguments from the parties, the Court adopts the proposed findings contained in the Magistrate Judge's Report and Recommendation.

■ The Court agrees with Magistrate Judge Foschio's conclusion that no reasonable jury could find that the claimants' use of the boat was attributable to the boat owners' negligence or that petitioners had privity and knowledge of claimant's actions. Rather, as the Magistrate Judge found, claimants' use of the boat was inimical to the boat owners' interests. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632, 79 S.Ct. 406, 3

---

1. On April 5, 2001, claimant Clementi commenced a separate action seeking a declaration that petitioners' insurers are required to defend and indemnify her in this exoneration action. *See Clementi v. Commercial Union Ins., et al*, 2001–CV–250A.

2. The Magistrate Judge suggested, in the alternative, that petitioners' motion could be denied because a material issue of fact *may* exist in favor of the claimants on the statute of limitations issue. Because the Court adopts the Magistrate Judge's primary recommendation that petitioners' summary judgment motion should be granted, the Court need not address the Magistrate Judge's alternative analysis.

L.Ed.2d 550 (1959); *Ryder v. United States*, 373 F.2d 73, 75 (4th Cir.1967). Accordingly, summary judgment exonerating petitioners completely from any liability for the boating accident and claimant White's injuries is hereby granted.

Furthermore, for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, claimant White's motion is denied insofar as it seeks to dismiss petitioner's action as time barred, and claimant Clementi's counterclaim seeking declaratory judgment is dismissed. The Court hereby directs the Clerk of Court to close the case.

IT IS SO ORDERED.

## AMENDED DECISION and ORDER

## REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This case was referred to the undersigned on August 11, 2000, by Honorable Richard J. Arcara for all pretrial matters. The matter is currently before the court on Petitioners' motion for summary judgment (Doc. No. 31), filed September 19, 2001, and on Claimant White's motion to dismiss[1] and to strike (Doc. No. 43), filed October 24, 2001.[2]

### *BACKGROUND*

Petitioners Group Therapy, Inc., Samuel Sears, Vincent Dire and Ken Stiver, owners of the M/Y Group Therapy, a recreational power boat, commenced this action on May 9, 2000, seeking exoneration from or limitation of liability for an anticipated action involving admiralty and maritime claims within the meaning of Fed.R.Civ.P. 9(h) and Rule "F" of the Supplemental Rules for Certain Admiralty and Maritime Claims. Jurisdiction in this court is pursuant to the Limitation of Liability Act, 46 U.S.C.App. §§ 181 *et seq.* The action arises from a boating accident in Lake Erie on July 22, 1999,[3] wherein one of the claimants, Connor White, sustained serious personal injuries when he fell from the vessel M/Y Group Therapy. Petitioners filed in connection with the Complaint an *Ad Interim* Stipulation for Value (Doc. No. 4), estimating the value of the M/Y Group Therapy at $79,500 and seeking to prevent the commencement of any legal actions against Petitioners and the M/Y Group Therapy pending the outcome of the exoneration action. Petitioners also stated their intention to deposit with the court, for Claimants' benefit, the sum of $79,5000 plus interest within ten days after entry of an order confirming the report of a commissioner to appraise the value of Petitioners' interest in M/Y Group Therapy, or file with the court a bond or surety in such amount.[4]

---

1. Claimant White's motion to dismiss does not seek to dismiss the Petition under Fed.R.Civ.P. 12(b)(6) for failing to state a claim for which relief can be granted. Rather, White seeks to dismiss the Petition as time-barred. Accordingly, White's motion to dismiss is more properly considered a motion for summary judgment and the court addresses it as such.

2. Although Claimant White's motion to strike is nondispositive, as the information which White seeks to strike from the record is highly relevant to the dispositive motions before the court, the court considers the motion to strike in the Report and Recommendation addressing the dispositive motions.

3. There is some question as to whether the boating accident occurred just prior to midnight on July 21, 1999, or just after midnight on July 22, 1999. However, the one day discrepancy is irrelevant to the issues in this case and, in the interest of simplicity, the court refers to the accident as occurring on July 22, 1999.

Claimant Connor White ("White") filed an answer to the Complaint on July 24, 2000 (Doc. No. 5). Motions to intervene were filed on December 29, 2000, by Franklin Lopez, Jr. ("Lopez") (Doc. No. 9), and Sara Clementi ("Clementi") (Doc. No. 10), and on February 7, 2001, by the City of Buffalo ("the City") (Doc. No. 16). On February 23, 2001, the motions to intervene were granted and Lopez, Clementi and the City were deemed parties to the action and directed to file and serve claims and answers within 45 days. Accordingly, answers to the Complaint were filed by claimants Sara Clementi ("Clementi") on April 5, 2001 (Doc. No. 20) and Franklin Lopez, Jr. ("Lopez") on April 9, 2001 (Doc. No. 21). Claimants Clementi and Lopez assert in their answers counterclaims against Petitioners, and Claimant Lopez also asserts a crossclaim against the City.[5] Petitioners filed Replies to Clementi's counterclaim on April 26, 2001, and to Lopez's counterclaim on May 1, 2001. Petitioners, on May 14, 2001, filed a Reply to the City's counterclaim.[6] A Scheduling Order filed on June 7, 2001, established December 31, 2001, as the deadline for depositions and discovery.

On September 19, 2001, Petitioners filed a motion for summary judgment, accompanied by the attached Affidavit of William K. Kennedy, Esq. ("Kennedy Affidavit") and Exhibits. Petitioners also filed in support of their summary judgment motion a Memorandum of Law (Doc. No. 32) ("Peti-tioners' Memorandum"), and the Verifications/Affidavits of Samuel Sears (Doc. No. 33) ("Sears Affidavit"), Kenneth Stiver (Doc. No. 34) ("Stiver Affidavit"), and Vincent Dire (Doc. No. 35) ("Dire Affidavit"). On October 19, 2001, Clementi filed in opposition to summary judgment a Memorandum of Law (Doc. No. 38) ("Clementi's Memorandum"), the Affidavit of Daniel W. Gerber, Esq. (Doc. No. 39) ("Gerber Affidavit"), and a Statement of Undisputed Facts (Doc. No. 40). The City, in opposition to summary judgment, filed on October 19, 2001, the Affidavit of Assistant Corporation Counsel Kevin J. Keane (Doc. No. 48) ("Keane Affidavit"). On October 24, 2001, White filed a motion to dismiss and to strike, accompanied by the attached Respondents' Statement of Undisputed Material Facts, the attached Affidavit of Michael P. Caffery, Esq. ("Caffery Affidavit") with exhibits, and a separately filed Memorandum of Law in Opposition to Petitioners' Motion for Summary Judgment in Exoneration From or Limitation of Liability and in Support of Respondent's Separate Motion to Dismiss and Strike (Doc. No. 44) ("White's Memorandum"). Petitioners' Reply Memorandum of Law and Opposition to Cross–Motions (Doc. No. 49) ("Petitioners' Reply Memorandum") was filed on November 26, 2001, along with the Verification of Vincent Dire (Doc. No. 50) ("Dire Supplemental Affidavit"), and Petitioners' responses to the statements of undisputed facts filed by White (Doc. No. 51) and Clementi (Doc. No. 52). Clementi's

---

**4.** The record does not indicate whether Petitioners ever deposited the sum of $79,500 with the court, or filed a bond or surety in such amount. Nor does the record reveal whether a commissioner was ever appointed to appraise the value of Petitioners' interest in M/Y Group Therapy.

**5.** Clementi also asserts a counterclaim against Petitioners seeking a legal defense and indemnification under Petitioners' Yacht Liability Insurance Policy issued by Commercial Union Insurance Company. However, such relief is available only from Commercial Union Insurance Company, which has not been made a party to the instant action.

**6.** The court notes that the City never filed an answer and, as such, has not formally asserted any counterclaim against Petitioners.

Reply Memorandum of Law (Doc. No. 54) ("Clementi's Reply Memorandum") was filed on December 4, 2001. Oral argument was deemed unnecessary.

Based on the following, Petitioners' motion for summary judgment should be GRANTED; White's motion to dismiss should be DENIED; and White's motion to strike is DENIED.

## FACTS [7]

On July 22, 1999, Claimant Connor White ("White") was seriously injured in a boating accident in Lake Erie, just off the shore of Buffalo, New York. The following facts are undisputed unless otherwise indicated.

At 9:45 P.M. on Wednesday, July 21, 1999, White went to the home of his friend Anthony "Tony" Figueroa ("Figueroa"). Other friends of White and Figueroa who were already at Figueroa's house or who arrived shortly thereafter included Scott Greenburg ("Greenburg"), Franklin "Frank" Lopez, Jr. ("Lopez"), Sam Catanzaro ("Catanzaro"), Mike Vitrano ("Vitrano") and Catanzaro's girlfriend, Sara Clementi ("Clementi"). The group made plans to go to the Erie Basin Marina ("the marina"), located on the shore of Lake Erie at Buffalo, New York and owned by the City, and "hang out" on a boat which White believed was owned by Lopez's uncle. The group traveled in two vehicles to the marina, with White, Figueroa, Greenburg and Lopez in one vehicle driven by Greenburg, and Catanzaro and Clementi in the other. Upon arriving at the marina, the security guards on duty informed them that the marina was closed, to which Lopez, who was employed at the marina as a dock worker, responded that he was the harbor master and convinced the security guards to let Lopez and his friends enter the marina.

Once inside the marina, the group of friends boarded the vessel M/Y Group Therapy, a 29.3' power boat with twin Mercruiser 220 horsepower gas engines, bearing hull I.D. No. FGBB0252D898, built by Chapparral Boats in 1998 ("the boat"), which was docked in slip no. H–05. The boat's registered owners include Group Therapy, Inc., and its officers and shareholders Samuel Sears, Ken Stiver and Vincent Dire who is Lopez's second cousin. Group Therapy, Inc., is a New York corporation with a principal place of business located at 1589 Niagara Street, Buffalo, New York 14213. One of the group had brought beer onto the boat which the members of the group began to drink. As one of the members of the group was searching in some of the boat's drawers for beer cups, the boat's keys were found and the group decided to take the boat out for a ride on Lake Erie. Various members of the group took turns driving the boat and eventually Clementi took over the wheel. Clementi made a quick turn and White, who was standing near the front of the boat, fell off, landing in the water and losing his glasses. The boat's propellers struck White, lacerating his right arm, right leg and the top of his right foot, and chipping his right elbow bone. White attempted to tread water, but his injuries prevented him from moving his right arm and leg.

Realizing that White had fallen overboard, Greenburg took over the wheel of the boat and returned to where White was in the water and Lopez and Figueroa, who was trained as a life guard, tossed life preservers to White, jumped into the water, swam to White and pulled White onto the life preservers, guiding White back to the boat. White was pulled back on board

---

7. The fact statement is taken from the pleadings and motion papers filed in this action.

the boat and Figueroa commenced first aid treatment of White's lacerations. Meanwhile, Greenburg piloted the boat back to the marina and the group disembarked with Lopez carrying White to Greenburg's vehicle.

Greenburg drove White to Buffalo General Hospital where his wounds were stitched and stapled. White later underwent surgery to screw the bone chip back onto his elbow. Following his surgery, White attended physical therapy at Amherst Therapy from mid-August 1999 to early December 1999, attending 1½ hour sessions three times a week. Despite the medical treatment and physical therapy, White's injuries resulted in some permanent limitations, including some loss of motion in his right elbow and arm and nerve damage to his right leg. Since the accident, White has been unable to participate in such previously enjoyed activities as running, basketball, lacrosse, soccer and football.

On the date of the accident, the M/Y Group Therapy was insured under Yacht Liability Insurance Policy No. CJJ A00817 ("the Insurance Policy"), purchased from Commercial Union Insurance Company ("Commercial Union"). The policy's liability limit is $500,000 per occurrence. An insured is defined under the policy as

> the person named on the Declaration Page and any "family member." It shall also include any person, firm, corporation or legal entity whom you permit to operate the covered yacht without charge and for private pleasure use only. It does not mean any person or organization or employee thereof operating a boat yard, marina, yacht, chartering or sales agency, or similar organization.
>
> "Family member" means a person related to the person named on the Declaration Page by blood, marriage or adoption (including a ward or foster child), and is a resident of that person's household.

Insurance Policy at 2.[8]

White maintains his attorney, Michael P. Caffery, Esq., sent a letter dated October 19, 1999 ("the October 19, 1999 Letter"),[9] to Dire at Group Therapy, Inc.'s business address, i.e., 1589 Niagara Street, Buffalo, New York 14213, notifying Dire of White's injuries and claims against the owners of M/Y Group Therapy. Petitioners deny receiving the October 19, 1999 letter. White further maintains that on November 19, 1999, his attorney sent a second letter ("the November 19, 1999 Letter"),[10] identical to the October 19, 1999 Letter, to Dire. Petitioners admit receiving the November 19, 1999 Letter.

White commenced an action in New York Supreme Court, Erie County, against the City regarding the accident and his resulting injuries.[11] Petitioners commenced the instant exoneration action on May 9, 2000, seeking to limit their liability to the boat's alleged value of $79,500. By Order filed June 19, 2000, Judge Arcara stayed and enjoined until the determination of the exoneration action all other suits, actions or legal proceedings regarding the accident. Nevertheless, White commenced a personal injury action in this court on July

---

8. A copy of the Insurance Policy is attached as Exhibit M to the Gerber Affidavit.

9. Exhibit A to the Caffery Affidavit.

10. Exhibit B to the Caffery Affidavit.

11. Although the record does not reveal when White's action against the City was filed, an examination under oath was taken of White on March 9, 2000, pursuant to New York General Municipal Law § 50–h (McKinney 1999), in connection with White's state court action.

24, 2000, naming as defendants Petitioners, Lopez, the City and Clementi. By order of the court on November 15, 2000 (*see* minute entry of November 15, 2000 in *White v. Group Therapy Inc.*, 2000–CV–630A(f)), further proceedings in White's personal injury action in this court were stayed pending the determination of the instant exoneration action. On April 5, 2001, Clementi commenced a declaratory judgment action in this court, *Clementi v. Commercial Union Insurance Company*, 2001–CV–250A(F), seeking to have Commercial Union defend and indemnify her in the instant exoneration action. Clementi also named as defendants Petitioners, the City, Lopez and White.

## DISCUSSION

### 1. *Motion to Strike*

On December 15, 1999, Claimant Lopez gave a tape recorded statement to John McClory of Royal Insurance Company, the Lopez family's homeowners insurer, regarding the July 15, 1999 boating accident ("Lopez's Statement").[12] In his statement, Lopez admitted that at the time of the accident there was beer on the boat, that he invited his friends onto the boat on July 21, 1999, although he had never before borrowed or driven the boat and did not feel he had permission to use the boat. Lopez Statement at 5–6. Lopez further stated that White found the boat keys, was the first to suggest taking a ride on the boat, and that although Lopez initially hesitated, Lopez eventually agreed to the request. Lopez Statement at 7. Claimant White moves to strike Lopez's Statement from the record, and thus prevent it from being considered in connection with Petitioners' motion for summary judgment.

According to White, Lopez's Statement should be stricken as it fails to meet the "testimonial requirements of Rule 56(e)" regarding the form of affidavits submitted in support of summary judgment and, as such, bears none of the requisite indicia of reliability as the statement is "an unsworn, unsigned hearsay statement made without the benefit of counsel by a partial third party transcribed from an audiotape possibly by an unknown party whose reliability would be impossible to determine." White's Memorandum at 6–7. Petitioners argue in opposition to the motion to strike that the accuracy and veracity of Lopez's Statement was admitted by Lopez's failure to respond to Petitioners' April 30, 2001 Notice to Admit directed to Lopez. Kennedy Affidavit ¶¶ 14–15.

There is no merit to White's motion to strike Lopez's Statement as such statement is offered not as an affidavit, but as an admission in response to Petitioners' Notice to Admit pursuant to Fed.R.Civ.P. 36 which permits each party to an action to require any other party to admit relevant facts not in controversy, thereby eliminating the need to produce witnesses and evidence in support of these facts. *See Booth Oil Site Admin. Group v. Safety–Kleen Corp.*, 194 F.R.D. 76, 79 (W.D.N.Y.2000) ("The purpose of Fed. R.Civ.P. 36 is 'for facilitating the proof at trial by weeding out facts and items of proof over which there is no dispute.' ") *Booth Oil Site Admin. Group v. Safety–Kleen Corp.*, 194 F.R.D. 76, 79 (W.D.N.Y. 2000) (quoting 4A Moore's Federal Practice, ¶ 36.02 (2d ed.1982)). *See also Dubin v. E.F. Hutton Group, Inc.*, 125 F.R.D. 372, 375 (S.D.N.Y.1989) (Rule 36 allows "narrowing or elimination of issues in a case" through obtaining admissions of facts conceded by parties). Requests for

---

**12.** A copy of the transcript of Lopez's Statement is attached as Exhibit J to Petitioners' Notice of Motion for Summary Judgment (Doc. No. 31).

admissions are permitted as to any matters within the scope of discovery under Rule 26(b)(1). Fed.R.Civ.P. 36(a). Rule 36 further provides that a matter for which admission is requested shall be deemed admitted unless, within 30 days after service, the party to whom the request is directed serves upon the requesting party a written answer or objection addressing the matter, signed by either the party or the party's attorney. Fed. R.Civ.P. 36(a). Furthermore, "[a]ny matter admitted under this rule [36] is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Fed.R.Civ.P. 36(b).

Here, Lopez never responded to the Notice to Admit Petitioners served on April 30, 2001, requesting Lopez admit that (1) he was interviewed on December 15, 1999 by John McClory of Royal Insurance Company regarding the July 22, 1999 boating accident, (2) the interview was tape recorded, (3) Lopez was provided with a written transcript of such tape recorded interview, (4) a genuine copy of the transcript of such interview was attached as Exhibit A to the Notice to Admit, and (5) such transcript was both true and accurate. Significantly, Lopez has not denied receiving the Notice to Admit, nor has he moved to withdraw or amend the admissions resulting from his failure to object to Petitioner's April 30, 2001 Notice to Admit regarding Lopez's Statement. Accordingly, the contents of Lopez's Statement are deemed admitted for the purposes of this action.

Furthermore, White's argument that Lopez's Statement does not comply with the "testimonial requirements of Rule 56(e)" ignores the fact that Fed.R.Civ.P. 56(c) plainly states that in ruling on a summary judgment motion, the court may consider other evidence, including "admissions on file." *See Donovan v. Carls Drug Co.*, 703 F.2d 650, 651 (2d Cir.1983) (rule 36 admissions may be used for Rule 56 summary judgment), *rejected on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133–34, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988); *see also Moosman v. Joseph P. Blitz, Inc.*, 358 F.2d 686, 688 (2d Cir.1966) ("It appears well settled that a failure to respond to a request to admit will permit the District Court to enter summary judgment if the facts as admitted are dispositive.").

Accordingly, Lopez, by failing to respond to Petitioners' April 30, 2001 Notice to Admit regarding the accuracy and veracity of Lopez's Statement, has admitted and conclusively established the truth of such statement such that its contents may be considered as evidence in connection with Petitioners' summary judgment motion. White's motion to strike is therefore DENIED.

### 2. *Summary Judgment*

Summary judgment of a claim or defense will be granted when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). The moving party for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment. *Celotex, supra*, at 331, 106 S.Ct. 2548.

Summary judgment shall be granted "if the pleadings, depositions, answers to in-

terrogatories, and admissions on file, together with the affidavits ... show that there is no issue as to any material fact, and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson, supra,* at 247–48, 106 S.Ct. 2505. Whether a fact is material depends on the substantive law of the claim and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [Fed.R.Civ.P. 56],' and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'

*Celotex, supra,* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56).

Thus, "as to issues on which the nonmoving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the nonmoving party's case." *Nora Beverages, Inc. v. Perrier Group of America, Inc.,* 164 F.3d 736, 742 (2d Cir.1998).

Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995). In opposing a motion for summary judgment a party "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Goenaga, supra,* at 18 (citing cases). Further, where the burden of proof on an issue for which summary judgment is sought is on the movant, should the movant fail to meet its initial burden of establishing the absence of any genuine issue of material fact as to that issue, the non-movant will prevail even if the non-movant submits no evidentiary matter establishing there is indeed a genuine issue for trial. *Zanghi v. Incorporated Village of Old Brookville,* 752 F.2d 42, 47 (2d Cir.1985).

In the instant case, Petitioners have moved for summary judgment on their claim for exoneration from or limitation of liability pursuant to the Limitation of Liability Act ("the Act"), 46 U.S.C.App. § 181 *et seq.* Claimants oppose the motion, arguing Petitioners' exoneration action is time-barred and, alternatively, there exists a question of material fact as to whether Petitioners, by leaving the keys in an unlocked compartment on the boat, which was docked at a marina where Lopez, one of the owner's cousin worked, impliedly granted Lopez and his friends permission to use the boat.

 Under the Act, a shipowner is permitted to restrict its liability resulting from any occurrence for which the vessel is liable, to the value of the vessel and its freight, provided such injuries were incurred without the owner's "privity and knowledge." 46 U.S.C.App. §§ 183(a) and 185; *Vatican Shrimp Co., Inc. v. Solis,* 820

F.2d 674, 677 (5th Cir.), *cert. denied,* 484 U.S. 953, 108 S.Ct. 345, 98 L.Ed.2d 371 (1987). The Act provides shipowners with two procedural methods for limiting their liability, including filing a limitation petition in federal district court pursuant to 46 U.S.C. § 185, and asserting exoneration or limitation as an affirmative defense to a claim, pursuant to 46 U.S.C. § 183. The initial burden is on the claimant to show evidence of fault on behalf of the shipowner seeking exoneration from or limitation of liability before the burden shifts to the shipowner to show a lack or privity or knowledge of such fault. *Coryell v. Phipps,* 317 U.S. 406, 409, 63 S.Ct. 291, 87 L.Ed. 363 (1943). A claimant may establish evidence of fault by demonstrating either that the vessel was unseaworthy, or that the cause of the accident was negligence. *Matter of Guglielmo,* 897 F.2d 58, 61 (2d Cir.1990). Exoneration will be granted only where there is no evidence of any contributory fault on the part of the shipowner or the ship's crew. *Tittle v. Aldacosta,* 544 F.2d 752, 755 (5th Cir. 1977). Where, however, exoneration is not granted, the shipowner may nevertheless prevail on the plea for limitation of liability, in which case the security funds will be distributed on a *pro rata* basis. *In Matter of Caribbean Sea Transport, Ltd.,* 748 F.2d 622, 626 (11th Cir.1984), *modified on other grounds,* 753 F.2d 948 (11th Cir. 1985).

■ Once a shipowner's right to limit its liability is contested, the cause becomes cognizable in admiralty and only a federal district court may exercise jurisdiction over the matter. *Solis, supra,* at 677 (citing *Langnes v. Green,* 282 U.S. 531, 543, 51 S.Ct. 243, 75 L.Ed. 520 (1931)). Further, Fed.R.Civ.P. 38, which preserves the right to a trial by jury for civil actions, "shall not be construed to create a right to trial by jury of the issues in an admiralty or maritime claim within the meaning of Rule 9(h)." Fed.R.Civ.P. 38(e).

## A. *Statute of Limitations*

In the instant case, Claimant White seeks to dismiss the Petition as time-barred. White's Memorandum at 4–5. Petitioners have moved for summary judgment on their claim for exoneration from or limitation of liability pursuant to the Limitation of Liability Act ("the Act"), 46 U.S.C.App. § 181 *et seq.* The Act permits a vessel owner to seek complete exoneration from liability, or to "restrict its liability, resulting from any occurrence for which the vessel is liable, to the value of the vessel and its pending freight." *Solis, supra,* at 677. As stated, the Act provides shipowners with two procedural methods for limiting their liability, including filing a limitation petition in federal district court pursuant to 46 U.S.C.App. § 185, and asserting exoneration or limitation as an affirmative defense to a claim, pursuant to 46 U.S.C.App. § 183.

■ Prior to 1936, a shipowner could institute a proceeding to limit liability at any time, including after the question of liability had been resolved against the shipowner. *Deep Sea Tankers v. The Long Branch,* 258 F.2d 757, 772 (2d Cir. 1958), *cert. denied,* 358 U.S. 933, 79 S.Ct. 316, 3 L.Ed.2d 511, *pet. for reh. denied,* 359 U.S. 921, 79 S.Ct. 578, 3 L.Ed.2d 583 (1959). Congress, however, amended the Act in 1936 to provide that a petition to limit liability under § 185 must be filed within six months of receipt of a "written notice of claim." 46 U.S.C.App. § 185. The law is thus well settled that "[t]he statute is a time bar with respect to a vessel owner's filing of a petition for limitation of liability." *In re Morania Barge No. 190, Inc.,* 690 F.2d 32, 33 (2d Cir.1982)

(citing cases).[13]

■ Although 46 U.S.C.App. § 185 does not indicate the type of writing or form necessary to satisfy its written notice of claim requirement, letters sent by claimants to vessel owners may constitute such notice. *Doxsee Sea Clam Co., Inc. v. Brown*, 13 F.3d 550, 554 (2d Cir.1994). Further, the Second Circuit has "employed a broad and flexible standard of review—reading letters of notice in their entirety and considering their 'whole tenor'—when determining if sufficient notice was given." *Brown, supra*, at 554 (citing *In re Allen N. Spooner & Sons, Inc.*, 253 F.2d 584, 586 (2d Cir.), *cert. dismissed*, 358 U.S. 30, 79 S.Ct. 9, 3 L.Ed.2d 48 (1958)). Specifically, "[n]otice will be sufficient if it informs the vessel owner of an actual or potential claim, which may exceed the value of the vessel, and is subject to limitation." *Brown, supra* (internal citations omitted).

■ Here, the October 19, 1999 Letter, as well as the essentially identical November 19, 1999 Letter, advise Dire that Mr. Caffery had been retained to represent White with regard to the injuries White sustained in a July 22, 1999 boating accident in the Buffalo Harbor of Lake Erie, and that the accident involved "a 1998, 30-foot Chaparel (sic), New York Registration 286OUS allegedly owned by Group Therapy, Inc." October 19, 1999 letter; November 19, 1999 letter. The letters further inform that at the time of the accident, the vessel was being used by Lopez and operated by Jacqueline Clementi.[14] *Id.* Finally, the letters request Dire provide his attorney and insurance company with a copy of the letter and that Dire ask his attorney and insurance company to contact Caffery regarding the matter. *Id.* Similar information has been held insufficient to trigger the six-month limitations period under 46 U.S.C.App. § 185.

The Second Circuit has recognized that because 46 U.S.C.App. § 185 requires that a shipowner, in addition to filing a limitation petition in federal court, also file a security for the full value of the vessel or surrender the vessel to a trustee, it is not reasonable to require a shipowner to take such action upon receipt of an ambiguous letter from a claimant. *In re Allen N. Spooner & Sons, Inc., supra*, at 586 (Hand, J., concurring) (observing that requiring shipowner to post security or surrender vessel upon receipt of claimant's "equivocal" notice "does not seem reasonable."). The Second Circuit has further held that where the claimant states a total claim amounting to substantially less than the value of the ship, with no other claims apparent, the six-month statutory time bar does not apply. *In re Morania Barge No. 190, Inc.*, 690 F.2d 32, 34 (2d Cir.1982), Rather, the limitations period is triggered only where is appears there is a reasonable possibility that the claims will exceed the ship's value and

13. There is, however, no time limit to pleading the limitation statute, 46 U.S.C. § 183(a), as an answer in an affirmative defense. *Grant v. Etoile Le Blanc*, 1996 WL 679730, *2 (N.D.N.Y. Sept. 25, 1996) (In contrast to a petition pursuant to § 185 to limit liability, "an affirmative defense pleading limitation of liability pursuant to Section 183 is not subject to the six-month period of limitations contained in 46 U.S.C.App. § 185.") (citing *Deep Sea Tankers, Ltd., supra*, at 772–73). The court notes that in White's personal injury action pending in this court, Petitioners have

not yet filed an answer given that proceedings in the action were stayed pending resolution of Petitioners' exoneration action. Accordingly, the exoneration action pursuant to 46 U.S.C.App. § 185 is the only ground for limitation of liability before the court.

14. The record does not explain why the letters of October 19, 1999 and November 19, 1999 refer to "Sara Clementi" as "Jacqueline Clementi."

[t]o hold otherwise would be to obligate a shipowner to go to the expense of posting security and taking the other steps necessary to commence a limitation proceeding when the claimant's specific representations demonstrate that such a proceeding will be wholly unnecessary.... A rule requiring a shipowner to seek limitation of liability regardless of the amount claimed might encourage claimants to understate the amount of their damage in the hope that the shipowner would be misled into not filing a timely petition for limitation.

*Id.*

Significantly, in *In re Morania Barge No. 190, Inc., supra,* the Second Circuit held that the six-month limitations period was not triggered where a claimant's affirmative statement on the record indicated his total claims against a shipowner were substantially less that the value of the ship and no other claims were anticipated. *Id.* at 34–35. Accordingly, the shipowner was not time-barred from filing a petition for exoneration from or limitation of liability under 46 U.S.C.App. § 185 when the claimant, some four and one-half years after commencing the action, amended his complaint to seek damages substantially higher than the ship's value. *Id.*

In another case that is factually similar to the instant case, the court held that a claimant's letter to a shipowner was so ambiguous as to fail to trigger the shipowner's duty to file a limitations petition in federal court. *In re Okeanos Ocean Research Foundation, Inc.,* 704 F.Supp. 412 (S.D.N.Y.1989). A letter written by the claimant's attorney to the shipowner contained in its caption the name of the injured party and the date of the accident, while the body of the letter advised only that the claimant's attorney had been retained to represent the claimant "in an action arising out of injuries he sustained while on your boat, the FIN BACK II, on the above date." *In re Okeanos Ocean Research Foundation, Inc., supra,* at 416. The letter further requested that a copy of the letter be forwarded to the shipowner's insurance carrier and that the shipowner contact the claimant's attorney to discuss the matter. *Id.* The court held such letter insufficient to trigger the limitations period because the letter was devoid of any details of the accident in question. *Id.* Specifically, the letter did not mention the cause or type of the claimant's injuries, nor did the letter lay any blame for such injuries on the shipowner so as to make clear that the claimant intended to seek damages from the shipowner. *Id.* at 417.

Similarly, in the instant case, the captions of the October 19, 1999 and November 19, 1999 Letters to Dire refer only to "Connor White." Mr. Caffery merely advises that he has

been retained to represent Connor White who was injured in a boating accident on July 22, 1999 in Lake Erie in the Buffalo Harbor.

Our investigation indicated that the boat involved in the accident was a 1998, 30–foot Chaparel (*sic* ), New York Registration 286OUS allegedly owned by Group Therapy, Inc.

At the time of the incident, the boat was being used by Frank Lopez, Jr. and operated by Jacqueline Clementi. Would you kindly provide a copy of this letter to your attorney and insurance company and ask that they contact me [Caffery] regarding this matter.

October 19, 1999 Letter and November 19, 199 Letter.

Significantly, the Letters neither describe the type or severity of White's injuries, nor provide any detail as to how such injuries were sustained. *See In re Okeanos Ocean Research Foundation, Inc., supra,* at 416–417 (observing that letter

failed to mention type or severity of claimant's injuries, or how injuries were sustained such that it was impossible to know whether such injuries resulted from some negligence of a crew member or a wave striking the ship). Accordingly, the October 19, 1999 and November 19, 1999 Letters fail to notify Dire of a potential claim against Dire and the other boat owners that may exceed the value of the M/Y Group Therapy, such that the shipowners should undertake the burden of petitioning for exoneration from or limitation of liability, in addition to posting a security equal to the vessel's worth or entrusting the vessel to a trustee pending the outcome of the exoneration proceeding. Accordingly, neither Letter was sufficient to trigger the applicable six-month limitations period and, as such, Petitioners' exoneration action is not time-barred.

Alternatively, a material issue of fact prevents summary judgment in favor of Claimants on this aspect of the motion. Specifically, Petitioners maintain they never received the October 19, 1999 letter but, rather, received only the November 19, 1999 letter. The November 19, 1999 letter is identical to the October 19, 1999 letter, except that the November 19, 1999 letter is signed. Further, the November 19, 1999 letter contains no reference to the October 19, 1999 letter nor to Petitioners' apparent failure to respond to the earlier letter. As the court is prevented on a motion for summary judgment from weighing facts, should the district judge find the letters sufficient to trigger the 46 U.S.C.App. § 185 statute of limitations, this issue must go to trial and, as such, precludes entry of summary judgment on this ground.

#### B. *Negligence and Permissive Use*

Claimants Clementi and the City maintain that summary judgment should not be granted in favor of Petitioners as material issues of fact exist as to whether Petitioners, by leaving the keys on board the boat, were negligent, and, coupled with the fact that Petitioner Dire's cousin, Lopez, worked at the marina, establish privity and knowledge that someone would take the M/V Group Therapy out on Lake Erie without the owners' express permission. Clementi's Memorandum at 7–13. Petitioners argue in opposition that nothing within the relevant federal maritime law governing this action establishes Petitioners had any privity or knowledge of the possibility that by leaving the keys on the M/Y Group Therapy, Petitioners implicitly consented to Claimants' use of the vessel on July 22, 1999. Petitioners' Reply Memorandum at 1–6.

The court initially considers what law is relevant to this action. As stated, Petitioners maintain only federal maritime law applies to the instant action, whereas Claimants rely on other sources of law in support of their implied permissive use claim, including New York Navigation Law, New York Vehicle and Traffic Law, New York Insurance Law, Clementi's Memorandum at 10–13, as well as information contained in the Marina's docking permit regarding a shipowner's obligation to secure the vessel so as to prevent its theft or illegal use. Keane Affidavit ¶¶ 17–21.

 Substantive maritime law applies whenever the court has admiralty jurisdiction. *Preston v. Frantz*, 11 F.3d 357, 358–59 (2d Cir.1993) (holding court obligated to apply substantive federal maritime law where court had admiralty jurisdiction in addition to diversity jurisdiction), *cert. dismissed*, 512 U.S. 1279, 115 S.Ct. 31, 129 L.Ed.2d 928 (1994). *See also East River S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 864, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (observing that generally, "with admiralty jurisdiction, comes

the application of substantive admiralty law"). As such, the court first determines in the instant case whether admiralty jurisdiction attaches.

 "[T]he purpose underlying the existence of federal maritime jurisdiction is the federal interest in the protection of maritime commerce, and that a case must implicate that interest to give rise to such jurisdiction." *Sisson v. Ruby,* 497 U.S. 358, 364 n. 2, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). Although "protecting commercial shipping is at the heart of admiralty jurisdiction," such interest "cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually *engaged* in commercial maritime activity." *Sisson, supra,* at 362, 110 S.Ct. 2892 (quoting *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 274, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972)) (emphasis in original). Rather, whether maritime jurisdiction is appropriate is determined according to a two-part test. *Sisson, supra,* at 361–63, 110 S.Ct. 2892. First, the incident at issue must be a potential hazard to maritime activity and, second, there must exist a substantial relationship between the activity giving rise to the incident and traditional maritime activity. *Id.* As relevant to the instant case, the Supreme Court has held that both the storage and maintenance of a vessel at a marina located on navigable waters, as well as the navigation of a vessel on navigable waters are "substantially related to 'traditional maritime activity.'" *Sisson, supra,* at 367, 110 S.Ct. 2892. *See also Jerome B. Grubart, Inc. v. Great Lakes Dredge and Dock Co.,* 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995) ("Navigation of boats in navigable waters clearly falls within the substantial relationship [prong of the admiralty jurisdiction test]; storing them at a marina on navigable waters is close enough ....") (bracketed text added).

Here, the incident at issue, the boarding of a vessel docked at a marina located on navigable waters and the subsequent taking and operation of said vessel on the navigable waters renders the exercise of maritime jurisdiction appropriate and, thus, substantive admiralty law is generally applicable. The exercise of federal admiralty jurisdiction does not, however, automatically displace state law. *Jerome B. Grubart, Inc., supra,* at 545, 115 S.Ct. 1043. Rather, "[a]dmiralty law, at times, looks to state law, either statutory or decisional, to supply the rule of decision where there is no admiralty rule on point." *Byrd v. Byrd,* 657 F.2d 615, 617 (4th Cir.1981) (citing *Wilburn Boat Co. v. Fireman's Fund Insurance Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955)).

In the instant case, Clementi urges this court to apply New York Navigation Law § 48, New York Vehicle and Traffic Law § 388 and New York Insurance Law § 3420(e) and hold that Petitioners, by leaving the keys to the M/Y Group Therapy on board, either had knowledge or impliedly gave permission for Claimants' use of the boat. Clementi's Memorandum at 10–11. As relevant, New York Navigation Law provides that negligence in the use or operation of a vessel shall be attributable to the vessel's owner. In particular,

[e]very owner of a vessel used or operated upon the navigable waters of the state . . . , shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vessel . . . *by any person using or operating the same with the permission, express or implied, of such owner.*

N.Y. NAV. LAW § 48 (McKinney 1989) (emphasis added).

New York Vehicle and Traffic Law similarly provides that negligence in the use or

operation of a vehicle shall be attributable to the vehicle's owner. Specifically,

> [e]very owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle ... *by any person using or operating the same with the permission, express or implied, of such owner.*

N.Y. VEH. & TRAF. LAW § 388 (McKinney 1996) (emphasis added).

Finally, New York Insurance Law prohibits the issuance of any insurance policy for personal injury or property damage liability as to any vessel as defined under N.Y. NAV. LAW § 48

> unless it contains a provision insuring the named insured against liability for death or injury sustained, or loss or damage occasioned within the coverage of the policy or contract, as a result of negligence in the operation or use of such ... vessel ... *by any person operating or using the same with the permission, express or implied, of the named insured.*

N.Y. INS. LAW § 3420(e) (McKinney 2000) (emphasis added).

Claimant Clementi, however, resorts to these three state law statutes in support of her novel "implied permissive use" argument in vain as it attempts to apply a standard of care different from what is required under federal maritime law.

██ It is settled that "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 632, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). At issue in *Ryder v. United States,* 373 F.2d 73 (4th Cir.1967), was whether the government was as fault to the member of a private party on a private yacht who was injured while attempting to board a Navy seaplane. The injured party had been invited aboard the seaplane by a crew member who offered to prepare dinner for the yacht party in exchange for beer. *Ryder, supra,* at 74. The court held that under the circumstances, the injured party's attempt to board the seaplane was inimical to the interests of the seaplane's owner, the United States Navy, given that the crew members' offer of food in exchange for beer was "irregular and unauthorized," a fact of which the seaplane's crew members, Navy personnel, were undoubtedly aware. *Id.* at 75. In *Royal Insurance Company of America v. M/Y ANASTASIA,* 1997 WL 608722 (N.D.Fla. Jan. 30 1997), the court refused to strike a shipowner's affirmative defense that a certain personal injury plaintiff was a trespasser aboard the subject vessel on the basis that if the defendant shipowner could prove that plaintiff was trespassing and, thus, was unlawfully aboard the vessel, then the shipowner would owe no duty of reasonable care to the plaintiff. *Id.* at *4.

Clementi relies in opposition to summary judgment on *Matter of Guglielmo, supra,* and *Application of Theisen,* 349 F.Supp. 737 (E.D.N.Y.1972), for the proposition that a shipowner's failure to discover that a vessel is in the hands of an incompetent crew and, thus, qualifies as unseaworthy, constitutes negligence on the part of the shipowner which precludes exoneration from or limitation of liability. Clementi's Memorandum at 7–8. Such cases are, however, inapposite as in both cases, the subject vessels were operated by the alleged incompetent persons with the permission of the shipowners. *Matter of Guglielmo, supra,* at 59; *Application of Theisen, supra,* at 738.

Neither Clementi nor the City points to any caselaw applying federal maritime law and supporting the proposition that Petitioners, by leaving the keys to the M/Y Group Therapy concealed in a compartment on the boat, while docked at a marina to which access to the public was denied, constitutes negligence. Moreover, Lopez admitted that on July 21, 1999, he was employed as a dock attendant at the marina where Lopez let his friends onto the M/Y Group Therapy which belonged to Dire, a relative, that Lopez and his friends proceeded to drink beer on the boat, that Lopez had never before borrowed or driven the boat, and that Lopez did not, on the date of the accident, feel as though he had permission to use the boat but, nevertheless, gave in to his friends' requests to take the boat for a ride. Lopez's Statement at 2–7. Claimant White stated at his deposition that Lopez gained entrance to the closed marina by falsely reporting to the security guards on duty that Lopez was the harbor master, and then calling the security guards from the marina office to demonstrate that Lopez had a key to access to the office and, as such, was the harbor master. White Deposition T.[15] at 16–21. White further stated that while looking for cups for the beer, someone found the keys in a drawer on the boat. White Deposition T. at 25–26.

Significantly, neither Lopez himself, nor anything else in the record, including Clementi's submissions, challenges the veracity of the statements contained in Lopez's Statement or White's Deposition. White's statements that Lopez, in order to gain admission to the marina from the security guards who initially denied Lopez and the group entrance, misrepresented himself as the "harbor master" under-

scores Lopez's admission that he did not have permission to board, let alone operate the boat. Moreover, although Lopez names White as the individual who found the boat keys, Lopez's Statement at 7, such assertion is not entirely inconsistent with White's statement that he did not recall who found the keys, White Deposition T. at 26, and, in any event, is irrelevant as to whether Petitioners' leaving the keys concealed in a compartment on the boat constitutes negligence. If boarding a seaplane at the invitation of a Navy crew member, but without the shipowner's permission, with the intention of being served a meal in exchange for beer, *Ryder, supra,* at 74, constitutes action inimical to the shipowner's interest, then certainly the actions of Claimants, at least one of whom was, as of the date of the accident, below the legal age to drink alcoholic beverages in New York, see Lopez's Statement at 1, including the boarding of the M/Y Group Therapy to drink beer and, upon discovering the keys to the vessel while searching in drawers for beer cups, deciding to take the boat for a late night spin on Lake Erie, also qualify as conduct inimical to Petitioners' interests.

Further, there is no merit to the City's argument set forth in the affidavit filed in opposition to summary judgment, that Petitioners, by leaving the keys on board the M/Y Group Therapy, violated the marina's rules and regulation obligating shipowners to secure their vessels against theft. Keane Affidavit ¶¶ 17–21. *See* Clementi's Reply Memorandum at 6–7. The City's argument suggests that Claimants' use of the M/Y Group Therapy on July 22, 1999, without the owners' permission, constituted a theft—undoubtedly a use inimical to the owners' interests and, as such, one

---

**15.** A copy of the transcript of White's Deposition is attached as Exhibit I to Petitioners'

Notice of Motion (Doc. No. 31).

which would excuse the owners of any reasonable duty of care toward Claimants, thereby exonerating them from liability. The violation of the marina's rules, even if true, does not establish Petitioners' "privity and knowledge" with persons who indisputedly acted as trespassers, at best.

On this record, the court finds that no reasonable trier of fact could conclude that White's injuries sustained in the July 22, 1999 boating accident involving the M/Y Group Therapy were in any way caused by negligence on behalf of Petitioners, or that there is any basis to find Petitioners had "privity and knowledge" of Claimants' actions. Accordingly, summary judgment completely exonerating Petitioners from any liability regarding the accident should be GRANTED.

### C. *Need for Discovery*

Claimants oppose summary judgment on the basis that discovery in this action is not complete. In particular, Claimants maintain they need to depose the shipowners to determine the circumstances under which the keys were left on board the M/Y Group Therapy such that Claimants, upon the discovery of the keys, were able to take the boat out into the water. Clementi's Memorandum at 13–15; White's Memorandum at 2; Keane Affidavit ¶ 21. Petitioners maintain that only Clementi has served discovery requests and, further, that the alleged necessary discovery is not material to the action. Petitioners' Reply Memorandum at 12–13.

Initially, the court observes that although the court's June 7, 2001 Scheduling Order (Doc. No. 28) establishes December 31, 2001, as the discovery cutoff, as of the filing of Petitioners' motion for summary judgment, *i.e.,* September 19, 2001, only Claimant Clementi had filed any discovery requests. In particular, on April 1, 2001, Clementi served Petitioners with a Deposition Notice.[16] Further, only Claimant White has invoked Rule 56(f) in support of his request for further discovery. White's Memorandum at 2. Nevertheless, a review of the record establishes that the need for discovery to prepare responses in opposition to summary judgment has not been sufficiently established.

Although White maintains that "Petitioners have consistently put off discovery under the guise of the stay pending their exoneration determination," White's Memorandum at 2, White submits nothing supporting such assertion. Furthermore, although the stay to which White refers was put into place on June 19, 2000, it orders only the stay of the filing of other suits or actions against Petitioners relevant to the July 22, 1999 boating accident and exempts the stay of proceedings relevant to the instant action. Further, scheduling orders issued on November 27, 2000 (Doc. No. 8), and June 7, 2001 (Doc. No. 28), specifically provide for discovery in this action to continue. Nor has any Claimant, including Clementi who submitted evidence substantiating her assertion that she served Petitioners with discovery requests, moved to compel discovery.

Neither has any Claimant complied with the procedure by which discovery under Rule 56(f) may be had. Specifically, to obtain discovery under Rule 56(f), a movant must file an affidavit describing (1) the information requested, (2) how such information will be obtained, (3) how the information is expected to create a genuine issue of material fact to defeat summary judgment, (4) the efforts employed to date to obtain such information, and (5) why those efforts have failed. *Ruotolo v. Department of Justice,* 53 F.3d 4, 11 (2d Cir.1995). Clementi's mere attachment of

---

**16.** A copy of the Deposition Notice is attached as Exhibit I to the Gerber Affidavit.

a Deposition Notice to the Gerber Affidavit and White's bald assertion that Petitioners have hidden behind the court's June 19, 2000 stay against the filing of any claim against Petitioners pending the outcome of this exoneration action fall far short of this standard.[17]

Finally, the discovery Claimants maintain is needed is irrelevant. In particular, Claimants assert the need to depose Petitioners to determine who left keys on board, implying that if Dire left the keys, it was because he anticipated his cousin, Lopez, may want to use boat. However, Lopez's admission that he did not have permission to use the boat moots this argument. Such admission is consistent with the fact that the keys were found only because someone on board the boat was rummaging through drawers looking for beer cups, rather than that the keys were readily observable.

As such, there is no merit to Claimants' assertions that summary judgment be denied absent the opportunity to conduct further discovery.

### 3. *Request for Indemnification and Defense*

■ As stated, Claimant Clementi, in her answer to the Petition, asserts a counterclaim against Petitioners seeking to be declared an insured under Petitioner's insurance policy issued by Commercial Union Insurance Company. Clementi's Answer ¶¶ 15–19. Clementi, however, has not impleaded Commercial Union as a party to this action. Moreover, Clementi, on April 5, 2001, commenced a separate action in which she names Commercial Union as a Defendant and also seeks declaratory judgment that she is an insured under the

insurance policy and, as such, is entitled to both a defense by counsel of her choice, as well as indemnification if White ultimately recovers a judgment against her. *See Clementi v. Commercial Union Insurance Company*, 2001–CV–250A(F). It is basic that the court has no jurisdiction to grant relief against an entity which has not been made a party to an action before the court. *See* Fed.R.Civ.P. 19 (requiring joinder of additional party needed for complete relief in an action). As such, Clementi's counterclaim seeking declaratory judgment in the instant action should be DISMISSED.

### *CONCLUSION*

Based on the foregoing, Petitioners' motion for summary judgment (Doc. No. 31) should be GRANTED; White's motion (Doc. No. 43) should be DENIED insofar as it seeks to dismiss the action as time-barred, and is DENIED insofar as it seeks to strike evidence.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88

---

17. Claimant White's reliance on the June 19, 2000 Order prohibiting the filing of any action against Petitioners relevant to the July 22, 1999 boating accident is further belied by the fact that on July 24, 2000, White filed a separate personal injury action against Petitioners. *See White v. Group Therapy, Inc.*, 2000–CV–630A(F).

L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Petitioners/Counter–Defendants and the Claimants.

SO ORDERED.