**In the Matter of Michael GUGLIELMO for Exoneration From or Limitation of Liability.**

**Jeanne M. KROEMER, Claimant–Appellant,**

v.

**Michael GUGLIELMO, Petitioner.**

**No. 509, Docket 89–7230.**

United States Court of Appeals, Second Circuit.

Argued Dec. 5, 1989.

Decided Feb. 23, 1990.

Clare B. Connaughton, Smithtown, N.Y. (Vincent J. Trimarco, Smithtown, N.Y., of counsel), for claimant-appellant.

Evan H. Krinick, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., for petitioner.

Before LUMBARD, NEWMAN and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Claimant-appellant Jeanne Kroemer appeals from Chief Judge Platt's decision that petitioner Michael Guglielmo's liability

for damages caused by a pleasure-boating accident is limited under the Limitation of Liability Act, 46 U.S.C.App. §§ 181–196 (1982 and Supp. V 1987) ("the Act"). *See In re Guglielmo*, 704 F.Supp. 352 (E.D.N.Y.1989). We agree with the district court that the Act applies to pleasure boats but believe that an issue of material fact exists as to Guglielmo's privity and knowledge regarding the accident. We therefore reverse and remand for a trial on the merits.

## BACKGROUND

On August 3, 1985, a 21–foot motorboat owned by Guglielmo collided with a boat owned and operated by appellant's decedent, Edward Kroemer. Kroemer was fatally injured in the accident. Guglielmo's 21–year old son, Michael Guglielmo, Jr., was operating the boat and was towing a waterskier in Smithtown Bay, on the north shore of Long Island. Guglielmo was in California when the accident occurred.

Jeanne M. Kroemer, as administratrix of Edward Kroemer's estate, filed a personal injury and wrongful death action against Guglielmo and his son in New York state court. Meanwhile, Guglielmo had petitioned in the Eastern District for an order exonerating him from liability or limiting his liability to the value of the vessel, which he stipulated to be $7,000, pursuant to Section 183(a) of the Act.

Kroemer moved to dismiss the petition for lack of subject matter jurisdiction on the ground that admiralty jurisdiction did not attach because the accident in question did not involve commercial maritime activity. The district court denied the motion. Kroemer later moved for summary judgment on the ground that the accident in question involved pleasure boats and the Act does not apply to collisions involving non-commercial vessels. Guglielmo cross-moved for summary judgment on the limitation of liability issue. The motion was accompanied by an affidavit from Guglielmo stating that, at the time he let his son use the boat, he knew his son to be a "careful, knowledgeable, and competent [boat] operator." The district court granted Guglielmo's motion for summary judgment, holding that the Limitation of Liability Act applied to pleasure boats and that there was no issue of material fact concerning petitioner's liability. *See* 704 F.Supp. at 353, 354.

## DISCUSSION

A. *The Limitation of Liability Act and Pleasure Boats*

■ The Limitation of Liability Act limits the liability of a vessel owner for injuries resulting from collisions to the value of the vessel and of any freight aboard where the owner is without "privity or knowledge" regarding the accident. 46 U.S.C. App. § 183(a). Kroemer urges that the limitation provision was enacted solely for the protection of owners of vessels engaged in maritime commerce and therefore should not apply to pleasure-boat accidents. We must disagree.

Section 183(a) states that the limitation applies to "any vessel."[1] Section 188 of

---

1. Section 183 provides:

    (a) The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

    (b) In the case of any seagoing vessel, if the amount of the owner's liability as limited under subsection (a) of this section is insufficient to pay all losses in full, and the portion of such amount applicable to the payment of losses in respect of loss of life or bodily injury is less than $420 per ton of such vessel's tonnage, such portion shall be increased to an amount equal to $420 per ton, to be available only for the payment of losses in respect of loss of life or bodily injury. If such portion so increased is insufficient to pay such losses in full, they shall be paid therefrom in proportion to their respective amounts.

    (c) For the purposes of this section the tonnage of a seagoing steam or motor vessel shall be her gross tonnage without deduction on account of engine room, and the tonnage of a seagoing sailing vessel shall be her registered tonnage: *Provided,* That there shall not be

the Act states that "Except as otherwise specifically provided," Section 183 applies to "all seagoing vessels, and also to all vessels used on lakes or rivers or in inland navigation, including canal boats, barges, and lighters." 46 U.S.C.App. § 188.[2] As indicated by the "Except as" clause quoted above, a variety of vessels, including some pleasure craft, are specifically excluded from certain subsections of Section 183. "Pleasure yachts," along with thirteen other varieties of vessels, are explicitly excluded from the term "seagoing vessel" for purposes of Sections 183(b)–(e), "even though the same may be seagoing vessels within the meaning of such term as used in section 188 of this title." 46 U.S.C.App. § 183(f). *See supra* note 1. When read together, therefore, Sections 183 and 188 expressly state that "any" and "all" vessels are subject to Section 183(a) because none of the exclusions apply to that section.

We appreciate that the inclusion of pleasure craft in the limitation provision seems rather unrelated to the legislative goal of fostering investment in commercial shipping and that this fact has led most commentators on admiralty law to favor exclusion. *See, e.g.,* G. Gilmore & C. Black, *The Law of Admiralty* 882 (2d ed. 1975); *Com-*

*plaint of Sisson,* 867 F.2d 341, 347–48 (7th Cir.1989), *cert. granted,* —— U.S. ——, 110 S.Ct. 863, 107 L.Ed.2d 947 (1990) (citing various commentators). However, exclusion from the term "seagoing vessel" of "pleasure yachts," along with thirteen other varieties of vessels for purposes of Sections 183(b)–(e), strongly suggests that Congress did not intend courts to invent fine distinctions among vessels under Section 183(a) based on presumed legislative intent.

Case law supports adherence to the Act's language. The Supreme Court has on at least two occasions assumed without discussion that the Act applies to pleasure craft, *see Coryell v. Phipps,* 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943); *Just v. Chambers,* 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941), and we have denied limitation to a pleasure-boat owner who had actual "privity or knowledge." *See Complaint of Interstate Towing Co.,* 717 F.2d 752 (2d Cir.1983). It is also significant that every court of appeals that has explicitly addressed the issue has applied the Act to pleasure craft.[3] *See In re Young,* 872 F.2d 176, 177 (6th Cir.1989) (cert. petition pending); *see also Petition of M/V Sunshine, II,* 808 F.2d 762 (11th Cir.1987) (assuming without discussion that Limitation of Lia-

---

included in such tonnage any space occupied by seamen or apprentices and appropriated to their use.

(d) The owner of any such seagoing vessel shall be liable in respect of loss of life or bodily injury arising on distinct occasions to the same extent as if no other loss of life or bodily injury had arisen.

(e) In respect of loss of life or bodily injury the privity or knowledge of the master of a seagoing vessel or of the superintendent or managing agent of the owner thereof, at or prior to the commencement of each voyage, shall be deemed conclusively the privity or knowledge of the owner of such vessel.

(f) As used in subsections (b), (c), (d), and (e) of this section and in section 183b of this title, the term "seagoing vessel" shall not include pleasure yachts, tugs, towboats, towing vessels, tank vessels, fishing vessels or their tenders, self-propelled lighters, nondescript self-propelled vessels, canal boats, scows, car floats, barges, lighters, or nondescript non-self-propelled vessels, even though the same may be seagoing vessels within the meaning of such term as used in section 188 of this title.

**2.** Section 188 provides:

Except as otherwise specifically provided therein, the provisions of sections 175, 182, 183, 183b to 187, and 189 of this title shall apply to all seagoing vessels, and also to all vessels used on lakes or rivers or in inland navigation, including canal boats, barges, and lighters.

**3.** We realize that several district courts have recently held that the Act does not—or should not—apply to pleasure craft. *See, e.g., Complaint of Roffe,* 724 F.Supp. 9 (D.P.R.1989); *Complaint of Myers,* 721 F.Supp. 39 (W.D.N.Y. 1989); *Complaint of Keys Jet Ski, Inc.,* 704 F.Supp. 1057 (S.D.Fla.1989); *Estate of Lewis,* 683 F.Supp. 217 (N.D.Cal.1987); *Complaint of Shaw,* 668 F.Supp. 524 (S.D.W.Va.1987), *rev'd,* 846 F.2d 73 (4th Cir.1988) (unpublished opinion reversing in accordance with *Richards v. Blake Builders Supply, Inc.,* 528 F.2d 745, 748 (4th Cir.1975)); *Complaint of Tracey,* 608 F.Supp. 263 (D.Mass.1985); *Baldassano v. Larsen,* 580 F.Supp. 415 (D.Minn.1984).

bility Act applied to pleasure-boat collision); *Richards v. Blake Builders Supply Inc.*, 528 F.2d 745, 748 (4th Cir.1975); *Gibboney v. Wright*, 517 F.2d 1054, 1057 (5th Cir. 1975).

■ Adherence to the Act's language is also consistent with federal maritime decisions indicating that the scope of the Act is coextensive with admiralty jurisdiction except insofar as Congress has enacted specific exemptions. *See Butler v. Boston and Savannah S.S. Co.*, 130 U.S. 527, 555, 9 S.Ct. 612, 618, 32 L.Ed. 1017 (1889); *see also Three Buoys Houseboat Vacations U.S.A., Ltd. v. Morts*, 878 F.2d 1096, 1102 (8th Cir.1989). Federal admiralty jurisdiction is not limited to commercial maritime activity. *See Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982); *see also Sisson*, 867 F.2d 341 (tort action arising from fire on pleasure yacht moored in recreational marina lacked sufficient nexus to traditional maritime activity to support admiralty jurisdiction; navigation and potential threat to commercial shipping provide nexus test for admiralty jurisdiction). The fact that the instant case indisputably involves navigation and is, under present case law, within federal admiralty jurisdiction, provides a further reason to believe the Act applies. *See Sisson*, 867 F.2d at 347–48. We therefore conclude that the language of the statute and current case law are controlling, and pleasure craft are subject to the Act's limitation on liability.

## B. *Summary Judgment*

■ Counsel for Kroemer has raised, in the most perfunctory fashion, the alternative argument that the grant of summary judgment should be reversed and the case remanded for a trial on the issue of Guglielmo's knowledge or privity concerning the accident. Notwithstanding the brevity of—more accurately but less charitably, the lack of—argument, we will review Chief Judge Platt's conclusion that no genuine issue of fact exists as to that issue.

Where a claimant can establish either that the vessel was unseaworthy—for instance, being operated by an incompetent crew, *see Application of Theisen*, 349 F.Supp. 737, 740 (E.D.N.Y.1972)—or that the accident was caused by negligence, a petitioner for limitation under Section 183(a) of the Act then has the burden of proving that he or she lacked knowledge or privity regarding the unseaworthiness or negligence. *See Tug Ocean Prince, Inc. v. United States*, 584 F.2d 1151, 1155 (2d Cir.1978), *cert. denied*, 440 U.S. 959, 99 S.Ct. 1499, 59 L.Ed.2d 772 (1979); *Theisen*, 349 F.Supp. at 740.

Guglielmo was not present at the accident and therefore did not have knowledge or privity regarding negligent acts. However, a trier of fact could find on the present record that the vessel was unseaworthy because Guglielmo's son was not a competent power boat operator. The son admitted in his deposition to drinking beer with his friends on the boat prior to the accident. He further stated that at the time of the accident he was operating the boat but was looking back at the waterskier and did not see the Kroemer boat until after the collision. The need to maintain a proper lookout while operating a boat at a speed sufficient to allow waterskiing is such an elementary and essential safety precaution that the failure to do so constitutes direct evidence of incompetence. In addition, the son acknowledged another instance in which he had been stopped by a bay constable for "going a little too fast." We believe a trier could find from these facts that the vessel had an incompetent crew and was thus unseaworthy. *Cf. Tug Ocean Prince*, 584 F.2d at 1155 (owner has duty to use "due and proper care" to provide competent crew; loss occurring because of neglect of that duty within owner's privity).

If the trier finds that Guglielmo's son was not a competent operator, the next question would be whether Guglielmo was "without ... knowledge" of that incompetence and unseaworthiness. Boat owners may not assume that would-be operators are competent until proven otherwise. Safe operation of a vessel requires more than motor skills and a working knowledge of machinery. Mistakes at sea can quickly

become irreversible and are often life-threatening. There are thus rules of the road to be learned, essential precautions to be taken as a routine matter, and a sense of caution to be imbued. For the boat-owner to be entitled to judgment as a matter of law, therefore, ignorance of a reason to suspect incompetence is not enough. Moreover, it is not enough for a boat owner to harbor a subjective belief that an operator is competent. That belief must be based on evidence of competence that renders the belief objectively reasonable.

The question is of course fact-specific with regard to the particular operator. In that regard, a trier of fact may distinguish between owners who entrust their vessels to professional owners and those who entrust them to non-professionals. The former may rely on business reputations and professional routines as evidence of competence. The latter, however, have much less assurance, for the intermittent, unsupervised operation typical of non-professionals may be insufficient to instill a knowledge of the rules of the road and of the need for constant, routine safety measures and cautious operation. Where non-professional operators are concerned, the first concrete manifestation of years of carelessness may be a sudden catastrophe. Whether the evidence available to a boat owner concerning a non-professional operator is sufficient to support a reasonable belief in the operator's competence is up to the trier of fact to determine in light of all the circumstances.

Summary judgment on this issue was granted principally on the basis of paragraph five of Guglielmo's affidavit, which stated:

My son Michael Guglielmo, Jr. was an experienced boat operator. I knew him to be a careful and diligent navigator and operator. Prior to August 3, 1985, Michael had been riding in and operating power boats for approximately fifteen years. He was instructed on the methods of operating power boats by myself, and received formal instruction from New York State in a Young Boatman's course. As a result of completing the aforementioned course, Michael received a certificate, called a license. I had personally observed Michael operate many boats, including several power boats owned by me, prior to this accident, and I observed him to be a careful, knowledgeable, and competent operator. There was no reason known to me which should have prevented me from allowing him to operate by [sic] boat on August 3, 1985.

We need not decide whether it would be sufficient for summary judgment purposes in view of petitioner's having the burden of proof on knowledge or privity because this affidavit is undermined by other matters of record. In his deposition, Guglielmo testified as follows:

Q. Did you instruct your son on how to operate the boat?

A. Yes.

Q. Where did you give that instruction?

A. On the boat in Smithtown.

Q. Can you tell us what was the nature of that instruction?

A. Well, he had the experience already, just a matter of how to start it, I would assume.

Q. You instructed him on how to start the boat?

A. A way of starting it, yes.

Q. Can you describe what you mean by your way of starting it?

A. Pushing the throttle forward into neutral, turning the key so the engine would rev a little faster.

Q. Would you instruct him on navigating the boat?

A. He is aware as much as I am, if not more.

Q. Based upon your prior instructions?

A. Based on his prior experience. He has more than I do. He spent more time on the water than I have, let's put it that way.

Q. Would that time spent be on your boat?

A. We have owned several boats, yes. And also on the present boat.

Q. So before this boat, your son had been operating prior boats?

A. Many boats, many boats, right.

Q. Did you instruct him on the use of the boat while pulling a water-skier?

A. Like I say, he knows more than I do. He is a skier. I'm not.

Q. Did you give—

A. He has the experience.

Q. Did you, yourself, at any time give him direct instructions on that?

MR. DE HAVEN: Just answer yes or no.

A. No.

These answers indicate that, contrary to Guglielmo's affidavit, the son's knowledge of nautical safety measures was not largely acquired under the father's guidance. Guglielmo himself does not like to operate the boat and has less boating experience than his son. The only specific instruction he could recall giving his son was in starting the boat's engine. Although the son had a young person's course in boat safety in order to acquire a license to operate a boat when he was thirteen years old, his boating expertise was largely acquired through use. The only other evidence in the record of his demonstrated competence appears to be the lack of previous accidents. Moreover, the father's testimony suggests that he may not have been sufficiently knowledgeable to evaluate his son's competence as a boat operator.

Guglielmo's credibility is further undermined by the testimony of the insurance agent who sold him a policy on the boat. The agent stated that shortly before the accident, in applying for a liability insurance policy on the boat, Guglielmo stated that he was the only operator of the boat and that the boat was not used for waterskiing. Even if summary judgment perhaps can be granted where questions of credibility arise only from unrelated impeachment materials, see *Kissell v. Breskow*, 579 F.2d 425, 428 (7th Cir.1978) (credibility question does not of itself create a triable issue of fact), Guglielmo appears to have lied about both his son's use of the boat and its use for waterskiing, matters indisputably central to this case. Given the conflict between his affidavit and his testimony and the agent's testimony that Guglielmo concealed his son's use of the boat,

we believe a trier would be within its authority to conclude that Guglielmo had not carried his burden of proving a lack of privity or knowledge. Summary judgment is, therefore, inappropriate. *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2726 (2d ed. 1983); *see also Schoenbaum v. Firstbrook*, 405 F.2d 215, 218 (2d Cir.1968) (en banc) (where knowledge and intent are at issue, full trial with opportunity to observe witnesses' demeanor is necessary), *cert. denied*, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969).

On the record before us, triable issues of fact exist as to Guglielmo's son's incompetence as an operator and Guglielmo's knowledge regarding that incompetence. Consequently, we reverse and remand for further proceedings.