08-1224-cv
Messina v.
White

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2008

(Argued: April 20, 2009          Decided: July 31, 2009)

Docket No. 08-1224-cv

_____

In the Matter of the Complaint of KEVIN MESSINA, as
Owner of the Wave Runner <u>Sunset Runner</u>, for
Exoneration from and Limitation of Liability.

KEVIN MESSINA,

                    <u>Petitioner-Appellant</u>,

                    - v. -

JOHN A. WHITE, MICHAEL MURRAY,

                    <u>Claimants-Appellees</u>.

_____

Before:  KEARSE, SACK, and LIVINGSTON, <u>Circuit Judges</u>.

          Appeal from a judgment of the United States District Court for the Eastern District of New York, Viktor V. Pohorelsky, <u>Magistrate Judge</u>, denying jet ski owner's request pursuant to 46 U.S.C. § 30505 for exoneration from, or limitation of, liability for maritime accident.

          Affirmed.

                              JAMES E. FORDE, New York, New York
                                   (Hill, Betts & Nash, New York,
                                   New York, on the brief), <u>for</u>
                                   <u>Petitioner-Appellant</u>.

ANDREW S. BUZIN, New York, New York (Bradley S. Zimmerman, The Jacob D. Fuchsberg Law Firm, New York, New York, on the brief), _for Claimaint-Appellee White_.

DOUGLAS FALCH, White Plains, New York (Penino & Moynihan, White Plains, New York, on the brief), _for Claimaint-Appellee Murray_.

KEARSE, _Circuit Judge_:

Petitioner Kevin Messina appeals from a final judgment of the United States District Court for the Eastern District of New York, following a bench trial before Viktor V. Pohorelsky, _Magistrate Judge_, denying his petition under the Limitation of Liability Act, 46 U.S.C. §§ 30501-30512, for exoneration from, or limitation of, liability for any injuries to claimants John White and Michael Murray resulting from the allision of a water craft, owned by Messina and operated by Murray, with White. The district court denied Messina's petition, finding that the accident was the result of negligence and unseaworthiness, of which Messina did not lack "privity or knowledge," 46 U.S.C. § 30505(b). On appeal, Messina contends that the district court erred in finding that the vessel was unseaworthy and in imputing privity and knowledge to him. Finding no error in the district court's findings of fact or conclusions of law, we affirm.

- 2 -

# I. BACKGROUND

The basic events are undisputed. Messina is the owner of the Sunset Runner, a water craft of the type commonly referred to as a wave runner or jet ski. On February 20, 2004, Murray and White, among others, were guests at Messina's beach house in Florida, on the Gulf of Mexico. While the Sunset Runner was being operated by Murray, towing Messina on an inner tube attached to the Sunset Runner by a 50-foot rope, and White was standing next to a beached wave runner, the Pelican Runner, also owned by Messina, the inner tube carrying Messina struck White and knocked him into the Pelican Runner.

## A. Messina's Suit for Exoneration or Limitation of Liability

In December 2006, White commenced an action against Messina and Murray in New York Supreme Court, Kings County, seeking an unspecified amount of damages for injuries resulting from the accident. The Limitation of Liability Act (or the "Act") provides that, within six months after receiving a claim, a vessel owner may bring a civil action in federal court, seeking a judgment exonerating him or limiting his liability. See 46 U.S.C. § 30511(a). When the owner brings such a suit and posts security in accordance with 46 U.S.C. § 30511(b), the pursuit of all claims against the owner related to the matter in question ceases, pending determination of the petition for exoneration or limitation of liability. See id. § 30511(c).

- 3 -

In March 2007, Messina commenced the present action in the district court. His amended complaint, in accordance with § 30511, petitioned for a judgment pursuant to 46 U.S.C. § 30505, which provides, in pertinent part, that the liability of a vessel owner for injuries from a collision "occasioned[] or incurred[] without the privity or knowledge of the owner" "shall not exceed the value of the vessel and pending freight," id. §§ 30505(a) and (b). The complaint alleged that the February 20, 2004 allision was not the fault of the Sunset Runner or Messina and requested judgment either exonerating Messina from liability for any injuries that resulted from the accident or limiting his liability to the value of the Sunset Runner and the inner tube, which the complaint alleged totaled $6,286.61.

Both White and Murray filed answers disputing Messina's entitlement to exoneration or limitation of liability. White asserted that he had a claim for damages for his injuries; and Murray claimed entitlement to contribution from Messina with respect to any judgment that might be entered against Murray in favor of White. The parties agreed to have the trial as to Messina's entitlement under the Act conducted by a magistrate judge.

B. The Trial and the Findings of the District Court

At the one-day bench trial, the witnesses testified to the basic events described above. In addition, White testified that prior to the accident, Messina had been towed by Murray for some

- 4 -

20-25 minutes, during which White heard Messina yelling to Murray to go faster. (See Trial Transcript February 6, 2008 ("Tr."), at 111.) At one point, Murray had begun to bring Messina back to shore, but Messina wanted to continue. (See id.) According to deposition testimony from Murray that was introduced at trial, it was at that point that Messina instructed him to go faster. (See id. at 150-51.) When Murray subsequently brought Messina toward the shore, leading to the accident, White did not see them because he was facing the beached Pelican Runner and had his back to the Gulf. Messina, in the inner tube, crashed into White's back, knocking White into the Pelican Runner.

Messina testified that shortly after Murray had begun towing him, he asked Murray to go faster because Murray "was going extremely slow. He was being very cautious." (Tr. 48.) At some point, Messina noticed some of his guests on the beach gesturing that they wanted to have a ride, and he instructed Murray to take him ashore. (See id. at 81-82.) Murray complied by executing a boomerang-shaped turn, designed to propel the inner tube carrying Messina to the shore. Messina said he did not know exactly how fast the tube approached the shore; but, he testified, "I was brought in at a little bit higher speed than--than I think was good" (id. at 32); Murray "did bring me in too fast" (id. at 51).

Messina testified that he was heading toward White, who had his back turned. (See Tr. 75-76.) Messina testified that he yelled a warning (see id. at 33); White testified that he heard no such warning (see id. at 111-13).

- 5 -

Messina testified that he had had no reason to believe that Murray had ever before operated a wave runner in an unsafe manner. Messina said he was aware that operating a water craft requires more skill if it is towing a tube than if it is not (see Tr. 54), and he testified as follows:

> Q. . . . [P]rior to the--to going--to giving Michael Murray permission to ride the Sunset Runner, you never asked him whether he towed anybody on an inner tube before, did you?
>
> A. Yes, I did.
>
> Q. And you asked him whether he had towed someone of your size on an inner tube before?
>
> A. No.

(Id. at 63; see also id. at 112 (Messina was about 5'10" or 5'11" tall and weighed close to 300 pounds).)

Murray, in his deposition testimony, stated that he had operated wave runners for many years, "since [his] earliest memory" (Tr. 133-34 (internal quotation marks omitted)). He testified that he had no conversations with Messina about wave runner safety. (See id. at 141.)

In a decision announced on the record on February 11, 2008 ("Decision Tr."), the district court concluded that Messina was not entitled to exoneration or limitation of liability, finding that the Sunset Runner was unseaworthy and was operated negligently, and that these conditions were within the privity and knowledge of Messina. The court noted that "[t]he burden of proving negligence or unseaworthiness rests with the claimant"; but "[t]he burden of proving lack of knowledge or privity rests

- 6 -

with the petitioner." (Decision Tr. 5.) The court found, <u>inter</u> <u>alia</u>, that

> [p]rior to the incident, Murray had been towing Messina aboard the inner tube for about 20 minutes. During that time Messina directed Murray's operation of the wave runner by instructing him to increase the speed at which it was moving.

(<u>Id</u>. at 3.) The court noted that at one point, Murray approached the shore to allow Messina to disembark, but retreated because Messina wanted to continue; after more towing, Messina instructed Murray to take him to the shore. (<u>See</u> <u>id</u>. at 3-4.) The court found that

> [a]s he approached the shore the second time, Murray guided the inner tube toward the shore at a speed greater than prudent given the presence of other people at the shore.

> As he approached the shore for the purpose of guiding Messina ashore the second time, Murray failed to see John White and two other persons standing at or near the shoreline. Murray also failed to see the other wave runner which had been beached at the shoreline and alongside of which John White was then standing.

> As a result of his failure to see White and the wave runner at the shoreline, and as a result of the greater than prudent speed at which he was guiding the inner tube ashore, Murray's operation of The Sunset Runner caused the inner tube to strike White at or very near the shoreline causing the injuries suffered by White.

(<u>Id</u>. at 4.)

The court noted as a matter of law that "[a] vessel is unseaworthy if it is being operated by an incompetent crew" (<u>id</u>. at 6 (citing <u>Matter of Guglielmo</u>, 897 F.2d 58, 61 (2d Cir. 1990) ("<u>Guglielmo</u>"))). Finding that "Murray was not sufficiently competent to operate The Sunset Runner while towing an inner tube

- 7 -

and while attempting to guide an inner tube to the shore," the court concluded that "Murray's lack of competence to operate The Sunset Runner while towing an inner tube and attempting to guide the inner tube to the shore rendered The Sunset Runner unseaworthy." (Decision Tr. 7.) The court concluded that "[t]he claimants have met their burden of proving that acts of negligence and conditions of unseaworthiness caused the injuries suffered by White," based on its findings that, inter alia,

> Murray operated The Sunset Runner in a negligent and incompetent manner by attempting to guide the inner tube in which Messina was riding to the shore in an area where other persons and water craft were positioned.

> . . . . Murray operated The Sunset Runner in a negligent and incompetent manner when attempting to guide the inner tube to the shore by driving it at a speed greater than prudent.

> . . . . Murray operated The Sunset Runner in a negligent and incompetent manner when attempting to guide the inner tube to the shore by failing to keep a proper lookout.

(Id. at 6-7 (emphases added).)

The district court noted that the determination as to "whether acts of negligence or conditions of unseaworthiness are within the 'knowledge or privity' of the owner is a fact specific undertaking." (Id. at 5.) As to those issues, it found that

> [p]rior to permitting Murray to tow the inner tube that day, Messina asked Murray whether he had ever towed an inner tube and Murray replied that he had. This is the only evidence adduced by Messina as to his knowledge of Murray's prior experience in operating a wave runner while pulling an inner tube.

(Id. at 3.) The court noted as a matter of law that

- 8 -

[w]here an owner entrusts his vessel to another to operate, <u>it is not enough for a boat owner to harbor a subjective belief that the operator is competent</u>. Ignorance of a reason to suspect incompetence is not enough. <u>Any belief that the operator is competent must be based upon evidence of competence that renders the belief objectively reasonable</u>.

(Decision Tr. 6 (citing <u>Guglielmo</u>, 897 F.2d at 62) (emphases added).) It found that

> [b]ecause Messina entrusted The Sunset Runner to the operation of Murray, and because he has not provided evidence that would justify his subjective belief in Murray's competence, the unseaworthiness of The Sunset Runner was within his knowledge or privity.

(Decision Tr. 8.) The court concluded that

> [t]he petitioner, Messina, has failed to meet his burden of establishing that the above acts of negligence and condition of unseaworthiness were without his knowledge or privity.
>
> <u>Because Messina directed Murray in the operation of The Sunset Runner, both as to the speed to be maintained and as to instructing Murray to guide him ashore in the inner tube, Messina directed the specific course of conduct that caused White's injury and the conduct fell therefore within Messina's knowledge or privity</u>. See In Re Singapore Navigation Company, 540 F.2d [39,] 44 [(2d Cir. 1976)].
>
> Messina has not demonstrated that he had sufficient evidence of Murray's competence to operate The Sunset Runner in guiding an inner tube to the shore. <u>Messina's statement that he had no reason to believe Murray was not competent to operate The Sunset Runner is not sufficient as it is simply a subjective belief unsupported by adequate evidence to make the belief objectively reasonable</u>.

(Decision Tr. 7-8 (emphases added).) The court concluded that "[b]ecause the acts of negligence and the condition of unseaworthiness that caused John White's injuries w[ere] within the knowledge and privity of the petitioner, the petition for

limitation of liability must be denied. See 46 USC Section 30505." (Decision Tr. 8.) Judgment was entered accordingly.

## II. DISCUSSION

On appeal, Messina contends that the district court should have found him blameless on the basis that he entrusted the wave runner to an operator whose competence he had verified, that the accident was caused by a pure navigational error by the competent operator, that such an error does not constitute unseaworthiness, and that the navigational error could not be imputed to Messina. We reject these contentions because Messina's premises are not supported by the record and are contrary to the factual findings of the district court, which are not clearly erroneous.

### A. The Limitation of Liability Act

The Limitation of Liability Act, 46 U.S.C. §§ 30501-30512, which from 1983 to 2006 was codified at 46 U.S.C. App. §§ 181-189, and appeared prior thereto in, inter alia, Rev. Stat. §§ 4281-4287, 4289 (1875), provides, with exceptions not pertinent here, that

> the liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight. . . .
>
> (b) Claims subject to limitation.--Unless otherwise excluded by law, . . . liabilities subject to limitation under subsection (a) are those arising from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on

- 10 -

board the vessel, <u>any loss, damage, or injury by collision</u>, or any act, matter, or thing, loss, damage, or forfeiture, done, <u>occasioned, or incurred, without the privity or knowledge of the owner</u>.

46 U.S.C. §§ 30505(a) and (b) (emphases added). "[P]leasure craft," as well as commercial vessels, "are subject to the Act's limitation on liability." <u>Guglielmo</u>, 897 F.2d at 61.

The phrase "privity or knowledge" is a "term of art meaning complicity in the fault that caused the accident." <u>Blackler v. F. Jacobus Transportation Co.</u>, 243 F.2d 733, 735 (2d Cir. 1957); <u>see</u>, <u>e.g.</u>, <u>Tug Ocean Prince, Inc. v. United States</u>, 584 F.2d 1151, 1159 (2d Cir. 1978) ("<u>Tug Ocean Prince</u>"), <u>cert. denied</u>, 440 U.S. 959 (1979); <u>The 84-H</u>, 296 F. 427, 431 (2d Cir. 1923), <u>cert. denied</u>, 264 U.S. 596 (1924); <u>see also</u> <u>Potomac Transport, Inc. v. Ogden Marine, Inc.</u>, 909 F.2d 42, 46 (2d Cir. 1990) ("Privity and knowledge under the statute have been construed to mean that a shipowner knew or should have known that a certain condition existed." (internal quotation marks omitted)). "In the case of individual owners, it has been commonly held or declared that privity as used in the statute means <u>some personal participation of the owner in the fault or negligence which caused or contributed to the loss or injury</u>." <u>Coryell v. Phipps</u>, 317 U.S. 406, 411 (1943) (citing <u>The 84-H</u>, 296 F. 427). "Where the owner's negligent act caused the alleged injury . . . all of the requirements of 'privity' are satisfied." <u>Tug Ocean Prince</u>, 584 F.2d at 1159 (other internal quotation marks omitted). The effect of the Act and its predecessors is "to enable the vessel owner to

limit his risk to his interest in the ship in respect to all claims arising out of the conduct of the master and crew . . . , while leaving him liable for his own fault[ and] neglect." The 84-H, 296 F. at 431; see, e.g., In re City of New York, 522 F.3d 279, 283 (2d Cir. 2008) ("Instead of being vicariously liable for the full extent of any injuries caused by the negligence of the captain or crew employed to operate the ship, the owner's liability is limited . . . unless the owner himself had 'privity or knowledge' of the negligent acts.").

"Privity, like knowledge, turns on the facts of particular cases." Coryell, 317 U.S. at 411. In considering a vessel owner's petition for exoneration or limitation of liability, the district court will normally be required to conduct a two-step inquiry. First, the court must determine whether the accident was caused by conduct that is actionable, for "[i]f there was no fault or negligence for the shipowner to be 'privy' to or have 'knowledge' of within the meaning of the statute, there is no liability to be limited," The 84-H, 296 F. at 432, and the owner would then be entitled to exoneration. As to the question of whether the accident was caused by actionable conduct, the burden of proof is on the claimant. See, e.g., Guglielmo, 897 F.2d at 61; In re Marine Sulphur Queen, 460 F.2d 89, 99 (2d Cir.), cert. denied, 409 U.S. 982 (1972). If the claimant carries that burden, the owner then has the burden of proving that the actionable conduct or condition was without his privity or knowledge. See, e.g., id. at 101.

- 12 -

Certain well established admiralty principles are relevant to these issues in the present case. First, a vessel owner has a duty to use "due and proper care" to provide a competent crew. Tug Ocean Prince, 584 F.2d at 1155; see, e.g., Guglielmo, 897 F.2d at 61. An injury occurring because of the owner's neglect of that duty is within the owner's privity. See, e.g., id. at 61; Tug Ocean Prince, 584 F.2d at 1155. To satisfy the due-and-proper-care standard, the owner's belief in the competence of the person to whom he is entrusting the vessel must have an objectively reasonable basis. See, e.g., Guglielmo, 897 F.2d at 61-62. A vessel owner is not entitled to limited liability as a matter of law merely because he subjectively believed the person he has allowed to operate his craft was competent. "[I]gnorance of a reason to suspect incompetence is not enough. . . . [I]t is not enough for a boat owner to harbor a subjective belief that an operator is competent. That belief must be based on evidence of competence that renders the belief objectively reasonable." Guglielmo, 897 F.2d at 62; see, e.g., id. at 61 ("Boat owners may not assume that would-be operators are competent until proven otherwise."). When an owner entrusts the operation of his vessel to an inexperienced person, he destroys any argument he might have had for limitation of his liability. See, e.g., Tug Ocean Prince, 584 F.2d at 1159. "Whether the evidence available to a boat owner concerning a non-professional operator is sufficient to support a reasonable belief in the operator's competence is up to the trier

of fact to determine in light of all the circumstances." Guglielmo, 897 F.2d at 62.

Second, "[s]eaworthiness is a relative term depending upon its application to the type of vessel and the nature of the voyage. The general rule is that the vessel must be staunch, strong, well equipped for the intended voyage and manned by a competent and skillful master of sound judgment and discretion." Tug Ocean Prince, 584 F.2d at 1155 (emphasis added). Thus, a vessel being operated by an incompetent captain or crew is considered unseaworthy. See, e.g., id.; Potomac Transport, Inc. v. Ogden Marine, Inc., 909 F.2d at 47; Guglielmo, 897 F.2d at 61. Further, "[i]t is hornbook law that when a moving vessel strikes a stationary object an inference of negligence arises and the owner of the vessel then has the burden of rebutting such inference." Tug Ocean Prince, 584 F.2d at 1159 (internal quotation marks omitted).

In sum, although "the mere presence on board of an owner does not constitute such privity as will preclude limitation of the owner's liability," Complaint of Interstate Towing Co., 717 F.2d 752, 754 (2d Cir. 1983); see, e.g., Blackler v. Jacobus Transportation Co., 243 F.2d at 735, if the owner, "by prior action or inaction set into motion a chain of circumstances which may be a contributing cause even though not the immediate or proximate cause of a casualty, the right to limitation is properly denied," Tug Ocean Prince, 584 F.2d at 1158.

B.  Application to the Present Case

In reviewing a judgment entered after a bench trial, we are to "give due regard to the trial court's opportunity to judge the witnesses' credibility," and we "must not . . . set aside" the district court's findings of fact "unless [they are] clearly erroneous."  Fed. R. Civ. P. 52(a)(6); see, e.g., Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985); Banker v. Nighswander, Martin & Mitchell, 37 F.3d 866, 870 (2d Cir. 1994).  "Under this standard, factual findings by the district court will not be upset unless we are 'left with the definite and firm conviction that a mistake has been committed.'"  FDIC v. Providence College, 115 F.3d 136, 140 (2d Cir. 1997) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  Anderson v. Bessemer City, 470 U.S. at 574.  We review the district court's conclusions of law, and its application of the law to the facts, de novo.  See, e.g., Henry v. Champlain Enterprises, Inc., 445 F.3d 610, 617-18, 623 (2d Cir. 2006); FDIC v. Providence College, 115 F.3d at 140.

We see no error in the district court's application of the above principles in the present case, nor any clear error in its essential findings of fact.  Although Messina argues that he was entitled to exoneration or limitation of liability on the basis that he entrusted the Sunset Runner to a competent captain and that a mere navigational error by a competent captain does not make a vessel unseaworthy, these arguments are meritless given

- 15 -

that the district court, as set forth in Part I.B. above, found that Messina had not produced sufficient evidence to show that he had an objectively reasonable basis for believing that Murray was competent to operate the Sunset Runner while towing Messina. Although Messina argues that he "had verified that Murray had towed people with an inner tube in the past" (Messina brief on appeal at 18 (citing Tr. 63)), the record provides no support for this assertion. Messina's testimony at the cited page, the relevant portion of which is quoted in full in Part I.A. above, was simply that he "asked" Murray whether Murray had towed anyone on an inner tube before (Tr. 63); and although the district court apparently assumed that Murray had responded affirmatively, nowhere in the record is there any evidence of what Murray answered. In response to our inquiry at oral argument as to whether there was any evidence as to Murray's answer to Messina's question, Messina's counsel stated, "It does not appear that it came out in the record . . . ."

Further, Messina's contention that the accident was caused by a mere navigational error on the part of Murray that should not be imputed to Messina is likewise meritless given the district court's explicit findings of fact as to how and why the accident occurred. As set forth in Part I.B. above, the court found that the accident had been occasioned by "acts of negligence and conditions of unseaworthiness" in several ways, including Murray's directing the inner tube carrying Messina toward an area where there were other people, and operating the Sunset Runner "at a

- 16 -

speed greater than prudent" (Decision Tr. 4, 6), and that "Messina directed Murray in the operation of The Sunset Runner, both as to the speed to be maintained and as to instructing Murray to guide him ashore in the inner tube" (id. at 7).

These findings are amply supported by the evidence. Messina testified that when Murray started out slowly and "cautious[ly]," Messina instructed him to go faster. (See Tr. 48.) White and Murray also testified that Messina had directed Murray to go faster. (See id. at 111, 150-51.) After Messina directed Murray to get him back to the shore because his guests wanted to ride the inner tube, Messina knew the tube was approaching the shore too fast. (See, e.g., id. at 32 ("I was brought in at a little bit higher speed than--than I think was good"); id. at 51 (Murray "did bring me in too fast"); id. (Messina "[w]ithout a doubt" would have crashed into the Pelican Runner itself if White had not been standing where he was).) And although Messina was coming in too fast and was heading directly toward White, who had his back turned (see id. at 75-76), there is no evidence that Messina instructed Murray either to slow down or to retreat to deeper water in order to make a new attempt to get Messina to shore at a more appropriate pace.

Finally, although Messina contends that the district court, in making its findings, misapplied the law by citing Singapore Navigation Co., S/A v. Mego Corp., 540 F.2d 39 (2d Cir. 1976), because that case involved a deviation from route, we see no error. The district court, in citing Singapore Navigation (see

Decision Tr. 5-6, 7), did not suggest that the present case involved a deviation; it cited only to the page of that opinion at which we held that the vessel owner was not entitled to limitation of liability for the loss because its president had "personally ordered the deviation and the deviation was causally connected to the loss," 540 F.2d at 44. The personal participation parallel is inescapable here, where Messina's inner tube crashed into White because it was moving too fast to be stopped, and where Messina had previously told Murray to go faster and did not tell him to slow down, even as Messina could see that the inner tube was rushing toward White, who was standing at or near the shoreline with his back turned.

## CONCLUSION

We have considered all of Messina's arguments on this appeal and have found them to be without merit. The judgment of the district court denying Messina's petition for exoneration or limitation of liability is affirmed.