13-272-cv
Marasa v. Atl. Sounding Co., Inc.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## AMENDED SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of January, two thousand fourteen.

PRESENT: RALPH K. WINTER,
GUIDO CALABRESI,
REENA RAGGI,
*Circuit Judges*.

------------------------------------------------------------------------

MADELINE L. MARASA, as personal representative of FREDERICK J. HARRINGTON, JR.,

*Plaintiff-Appellee*,

v.                                                          No. 13-272-cv

ATLANTIC SOUNDING CO., INC., WEEKS MARINE, INC., MV CANDACE, her engines, equipment and tackle, in rem,

*Defendants-Appellants*.

------------------------------------------------------------------------

APPEARING FOR APPELLANT:     TODD KENYON (Ronald Betancourt, *on the brief*), Betancourt, Van Hemmen, Greco & Kenyon, LLC, New York, New York.

APPEARING FOR APPELLEES:   JAMES M. MALONEY, ESQ., Port Washington, New York, Tabak, Mellusi & Shisha, LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Nina Gershon, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on January 7, 2013, is AFFIRMED in part and VACATED and REMANDED in part.

Plaintiff Frederick Harrington, now deceased and represented on this appeal by personal representative Madeline L. Marasa, sued defendants Atlantic Sounding Co., Inc., Weeks Marine, Inc., and the MV Candace, her engines, equipment and tackle, in rem, under the Jones Act and general maritime law for injuries sustained on the Candace vessel while in defendants' employ.   Defendants now appeal from a judgment after a bench trial awarding a total of $1,727,471.16.   See Harrington v. Atl. Sounding Co., Inc., 916 F. Supp. 2d 313, 324 n.19 (E.D.N.Y. 2013).   Defendants submit that the district court erred in finding that they negligently handled the tug, that a lack of training rendered the tug unseaworthy and caused Harrington's injury, and that Harrington mitigated his lost wages damages.   They further contend that the district court awarded excessive damages.   We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

2

We review a district court's findings of fact at a bench trial for clear error and its legal conclusions de novo. See Roberts v. Royal Atl. Corp., 542 F.3d 363, 367 (2d Cir. 2008).[1]

1.    Jones Act Negligence

Insofar as defendants contend that the Supreme Court's decision in CSX Transp. Inc. v. McBride, 131 S. Ct. 2630, 2643 (2011), dictates that an ordinary, rather than relaxed, negligence standard must be applied here, see Williams v. Long Island R.R. Co., 196 F.3d 402, 406 (2d Cir. 1999) (discussing relaxed standard of negligence for FELA cases); see also Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 119 (2d Cir. 2010) (recognizing Jones Act to adopt FELA doctrine of liability), we need not here decide the point because the district court expressly stated that it found Harrington to satisfy the ordinary negligence standard, and we identify no error in that determination.

Defendants argue that the district court erred in finding that the Candace was abeam the ocean at the time of the accident, the "linchpin" of its negligence determination.[2] This is a finding of fact that we will not upset unless the record leaves us with the firm

---

[1] Although this Circuit is unique in professing to review determinations of negligence de novo, we have observed that our practice "is not so different from that of the other circuits" because we review the underlying facts relevant to a negligence determination for clear error. In re City of New York, 522 F.3d 279, 282–83 (2d Cir. 2008).

[2] "Abeam the ocean" means that a vessel is travelling perpendicular to the predominant wave movement, thus causing waves to hit a vessel's sides.

3

conviction that a mistake has been made. See Travellers Int'l, A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1574 (2d Cir. 1994). That is not this case.

Defendants' argument rests primarily on the fact that Harrington himself did not testify that the Candace was abeam the ocean at the time of the injury. Harrington and his fellow crewmate, Sears, both experienced seamen, nevertheless testified that the tug was "rolling," and as Candace Captain Scheibe stated in his deposition, which was introduced as a trial exhibit, a vessel heading into the waves ("straight into the sea") will pitch, but a vessel that is abeam the sea (or "in the trough") will roll. J.A. 1928. In fact, Captain Scheibe testified that a ship will roll more if it is abeam the sea. Given that on the day of the accident the wind was only five to ten miles per hour from the south, the district court could reasonably conclude that for Sears and Harrington to experience the disruptive rolling about which they testified, it was more likely than not that the tug was abeam the sea. Moreover, Harrington's expert testified that, when a tug is abeam the sea, the vessel is more likely to drift out of position, causing a line to become taut, as occurred here, causing Harrington's injury. In sum, we identify no clear error in the district court's factual finding that the Candace was operating abeam the sea at the time of injury.

Defendants posit that, even if the tug was abeam the sea, positioning a tug in this way does not violate the Jones Act, which requires only that an employer exercise reasonable care to protect its employees from known hazards or potential hazards of which it should have known. See Williams v. Long Island R.R. Co., 196 F.3d at 406. In fact,

4

this is a "high" standard of care. Tufariello v. Long Island R.R. Co., 458 F.3d 80, 90 (2d Cir. 2006). In concluding that defendants failed to satisfy it, the district court expressly credited the testimony of Harrington's expert, who stated that a vessel performing the operation at issue here should be positioned "to minimize[] any chance of the vessel moving to cause [workers] to get jerked or lose their balance and get hurt," J.A. 265, and that, "in this case, the best position would have been having the bow into the sea instead of abeam, where the vessel was rolling," id. at 266. First Mate Posciask, who was responsible for positioning the tug, however, testified that he was unconcerned about the position from which he approached the buoy. These facts, coupled with the trial court's findings regarding the slick and open stern, admitted a finding of negligence with respect to the positioning of the vessel for the task at hand.

In urging otherwise, defendants submit that their expert testified that anchor-handling vessels frequently maneuver abeam the sea and that operating in such a manner cannot be negligent as a matter of law absent proof that such action was unreasonable in the circumstances. Not only did the district court credit Harrington's expert as to the proper way to operate an anchor-handling operation generally, however; it further found that Harrington proved circumstances that would make operating abeam the sea negligent for the task being performed, given the lack of non-skid paint or a bulwark against which the crew could gain traction and the lack of training for the crew in performing the operation at issue. It was in such circumstances that defendants' failure to

position the tug to minimize rolling could be found negligent. Defendants' argument to the contrary is meritless.

2.    Unseaworthiness

Defendants challenge the district court's finding of unseaworthiness based on inadequate training of the crew. Our precedent recognizes that "a vessel being operated by an incompetent captain or crew is considered unseaworthy." In re Complaint of Messina, 574 F.3d 119, 127 (2d Cir. 2009); see Matter of Guglielmo, 897 F.2d 58, 61 (2d Cir. 1990); Tug Ocean Prince, Inc. v. United States, 584 F.2d 1151, 1155 (2d Cir. 1978); see also 1B Benedict on Admiralty § 24 (2004) (recognizing that "an unseaworthy condition . . . on an otherwise fit vessel" can be created by "incompetent training or experience" or "unsafe method of work").

Here, the record supports the district court's finding that the Candace's crew was not trained for the specific task of anchor-handling here at issue. None of the three men involved in the anchor-handling on the day of the accident had experience with that specific task. Harrington had never before pulled anchors on a vessel with an "open stern," i.e. without bulwarks for leverage and stability. Sears had neither worked on an open stern deck before arriving on the Candace, nor performed the anchor-handling operation at issue until the day of the accident. Posciask had never piloted a tugboat that handled anchors before joining the Candace's crew, and had operated only on tugs with bulwarks and non-stainless steel decks. Despite this inexperience with the specific task at

6

issue, the record indicates that defendants failed to train any of the men as to how to perform it safely. Thus, Harrington did not know the proper way to position himself to perform the task and to avoid injury. More important, Posciask did not understand the significance of not positioning the Candace abeam the sea to minimize movement that would cause the wire to tighten and jerk Harrington, which ultimately and directly caused his injury. Together, these circumstances permitted the district court to find that the crew was not competent to perform the anchor-handling task at issue safely. See Potomac Trans., Inc. v. Ogden Marine, Inc., 909 F.2d 42, 47 (2d Cir. 1990) (concluding in context of navigational negligence that single instance of gross negligence or mismanagement, if sufficiently severe, may lead to conclusion of incompetent crew).

Defendants contend that there was no need for additional training because Harrington and Sears were experienced in activities similar to anchor lifting, and Posciask was a licensed pilot with many years of tug experience and some limited experience pulling anchors on the Candace.[3] The district court did not find the Candace crew incompetent generally. Rather, it found them incompetent for lack of training safely to perform the task at issue when presented with the particular combination of circumstances

---

[3] Insofar as defendants also contend that, if the Candace was unseaworthy, its unseaworthiness did not cause Harrington's injuries, this is a variation on their argument that the tug was not abeam the sea, a challenge to the district court's factfinding that we have already rejected for the reasons articulated supra at 3–4.

of an open stern tug with a stainless steel deck lacking non-skid paint and a vessel positioned abeam the sea.

3.    Damages

    a.    Mitigation

A seaman seeking compensation for lost wages is obliged to mitigate his losses by seeking new employment.  See Schneider v. Nat'l R.R. Passenger Corp., 987 F.2d 132, 136 (2d Cir. 1993).  The burden, however, is on the employer to demonstrate that the plaintiff could, with reasonable effort, have so mitigated his damages.  See Jones v. Consolidated Rail Corp., 800 F.2d 590, 593 (6th Cir. 1986).

Defendants submit that they carried this burden by showing that Harrington made no effort to seek gainful employment or to be retrained so that he could obtain a job.   In their reply brief, defendants cite Greenway v. Buffalo Hilton Hotel, 143 F.3d 47 (2d Cir. 1998), a Title VII case, which states that an employer is "released from the duty to establish the availability of comparable employment if it can prove that the employee made no reasonable efforts to seek such employment."  Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 54 (2d Cir. 1998).  This court has never applied the Greenway rule in the FELA context, and we are not inclined to do so here given defendants' failure to cite Greenway in their opening brief or to provide any argument as to why it should apply to FELA or Jones Act claims.  See McCarthy v. S.E.C., 406 F.3d 179, 186 (2d Cir. 2005).  In any event, Greenway references a failure of "reasonable efforts," and defendants fail to demonstrate

8

clear error in the district court's finding that Harrington's serious physical limitations, limited education, and age made it so unlikely that he would find employment that it was not unreasonable for him not to have sought employment.

    b.    <u>Pain and Suffering</u>

In their opening brief, defendants argue that the award of $500,000 in past, and $700,000 in future, pain and suffering damages was excessive. After defendants filed their principal brief, however, Harrington passed away. Defendants in their reply brief ask this court to remand to the district court for further consideration of the effect of Harrington's death on lost wages and pain and suffering. We decline to do so. Defendants point us to no authority for remanding for recalculation of damages after final judgment in light of a successful plaintiff's death.[4] Instead, they cite us to <u>Korn v.</u>

---

[4] To the contrary, in <u>Davis v. Jellico Cmmty. Hosp., Inc.</u>, 912 F.2d 129 (6th Cir. 1990), the Sixth Circuit affirmed the denial of Rule 59 and Rule 60 motions made when plaintiff died shortly after a jury verdict and judgment in his favor. The court reasoned that:

> [t]o hold that a plaintiff's death following a jury verdict is the sort of "substantial injustice" requiring the reopening of cases or award of new trials under the Federal Rules of Civil Procedure would be to invite a morass of appeals from defendants in cases where the plaintiffs did not survive an "acceptable" amount of time following the entry of final judgment.

<u>Id.</u> at 135; <u>see also</u> <u>Boyd v. Bulala</u>, 905 F.2d 764, 769–70 (4th Cir. 1990) (affirming denial of defendant's request for relief under Rule 60(b) where plaintiff died after verdict but before judgment).

9

Franchard Corp., 456 F.2d 1206 (2d Cir. 1972), wherein this court observed that, "where circumstances have changed between the ruling below and the decision on appeal, the preferred procedure is to remand to give the district court an opportunity to pass on the changed circumstances." Id. at 1208. Korn, however, made this statement in the context of reviewing a district court's decision to revoke a class status designation under then-existing Fed. R. Civ. P. 23, not after a final judgment entered following an award of damages at trial. See id. at 1207.[5] Thus, in the absence of error in the final judgment, we will not remand for a recalculation of damages based on plaintiff's death.

Insofar as defendants originally argued that the district court's award of pain and suffering damages was excessive, we review for clear error, see Serricchio v. Wachovia Secs. LLC, 658 F.3d 169, 191 (2d Cir. 2011), and identify none here. The district court found that Harrington's injury resulted in extraordinary pain and suffering, requiring multiple spinal surgeries and daily medication. Defendants cite the court to multiple cases with lower or similar damages awards in an effort to persuade us that the current award is beyond what previous courts have awarded. These cases, however, where comparable, do not leave us with the firm conviction that the district court here awarded excessive compensatory damages.

---

[5] See Davis v. Jellico Cmmty. Hosp., Inc., 912 F.2d at 133 (recognizing that, where courts have tended to remand in light of new factual developments, it has been in the context of injunctive relief scenarios or other prospective relief, "not attempts to revise jury verdicts").

c.   Arbitration Award

The parties agree that the total award should be reduced by $16,308, which was previously paid pursuant to a Claim Arbitration Agreement.  Thus, we vacate the judgment to allow the district court on remand to adjust the final award to reflect this payment.

\* \* \*

We have considered defendants' remaining arguments, and we conclude that they are without merit.  Accordingly, the judgment of the district court is AFFIRMED in part and VACATED and REMANDED in part, with costs charged against the Appellants and given to the Appellee.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court